Commonwealth *v.* Cramer, Appellant.

Argued October 5, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*John Patrick Walsh*, with him *Leon Rosenfield*, for appellant.

*Colbert C. McClain*, Assistant District Attorney, with him *John H. Maurer*, District Attorney, for appellee.

OPINION BY ARNOLD, J., November 14, 1950:

The appellant was convicted on one indictment charging (1) assault, armed with an offensive weapon, with intent to rob; (2) robbery, being armed with an of-

fensive weapon; (3) committing a crime of violence while being armed with a firearm. He was convicted on two counts of a second indictment, (1) carrying a concealed deadly weapon; and (2) unlawful carrying of a firearm without a license.

The verdict of the jury established that Trainer, the victim, a head waiter at one of the prominent Philadelphia hotels, from time to time went to the City of Reading to gamble, in which he was very successful. In these excursions one Weinstein usually drove him in an automobile. On April 3, 1949, Weinstein, by appointment, picked up Trainer, who rode in the back seat. In the front seat was one Silverstein, and with Trainer in the back seat a man named Greenstein.

On the outskirts of Philadelphia the car stopped at a red light and the defendant, Cramer, entered the automobile, ordered the driver to proceed in a new direction, and in the vicinity of Vine and Water Streets required the driver to stop. The defendant drew a gun, ordered Trainer and Greenstein out of the car, and took from Trainer $4,000. The defendant next ordered Silverstein out of the car and drove away with Weinstein. Trainer, Silverstein and Greenstein reported the robbery to a local police station.

When the case was called for trial[1] defendant's counsel moved for a continuance, averring that Weinstein, Greenstein and Silverstein were eyewitnesses to the alleged robbery; that their names were not endorsed on the indictments; and that the defendant's attorney and writ server had made diligent and unsuccessful efforts to subpoena these three witnesses at various times between May 2 and May 9. It was further averred that these witnesses were essential to the defendant's case; that it was the duty of the Commonwealth to produce them in Court; and that the defendant intended to call

---

[1] On May 12, 1949.

4

them on his own behalf if they were not called by the Commonwealth. It was averred that the defendant was in jail awaiting trial, and that no harm could result to the Commonwealth by a continuance. Defendant's counsel also suggested that the witnesses in question did not and would not identify the defendant as the robber. The only reply by the Commonwealth was that these witnesses had been interrogated by its officers and that all said they could not tell who committed the robbery; that one of them thought it was committed by a negro; and that the only identification testimony of the Commonwealth was that of the victim, Trainer. The Commonwealth could have produced them, and in fact a few days after the instant verdict the Commonwealth did bring them in and asked the court to hold them as a committing magistrate. We think common fairness made it the duty of the Commonwealth to have produced these witnesses in court at the trial, or to show reasonable efforts to produce them; or, in view of the defendant's efforts to obtain the witnesses, that a continuance be granted. All of the difficulty and any motion for a continuance would have been avoided had the Commonwealth conformed to the practice suggested in *Commonwealth v. Sarkis et al.,* 164 Pa. Superior Ct. 194, 199, 63 A. 2d 360, and had the eyewitnesses present in court, notifying the defendant that the Commonwealth would not call them. See also *Commonwealth v. Keller,* 191 Pa. 122, 134, 43 A. 198; *Commonwealth v. Deitrick,* 221 Pa. 7, 15, 70 A. 275. The question was not whether the testimony of the eyewitnesses would be helpful to the Commonwealth,—which was not bound *to call* them. The appellant's contention in this regard is sustained.

Defendant was not entitled to affirmance of his second and third points to the effect that the jury might infer, because of the failure of the Commonwealth to produce Weinstein, Greenstein and Silverstein, that the

testimony would have been favorable to the defendant, or unfavorable to the Commonwealth. As we said in the Sarkis case, there is no invariable duty on the Commonwealth to call eyewitnesses, although in that case we held that such a charge would have been proper if the Commonwealth had not called the victim in the case at trial. We there called attention to cases holding that the Commonwealth might be obliged to call certain witnesses, but not merely because they were eyewitnesses. See also *Commonwealth v. Thurman et al.,* 167 Pa. Superior Ct. 642, 76 A. 2d 483.

In this case there was a multiplication of charges. As we said in *Commonwealth v. Weatherwax et al.,* 166 Pa. Superior Ct. 586, 588, 73 A. 2d 427, the court must, under such circumstances, define the various crimes charged. This contention of the defendant is sustained. If, as suggested in the Weatherwax case, the Commonwealth had made a single count of armed robbery, i.e., hold-up, the crime would have been self-defining.

We discover no testimony in the case to justify the remark of the assistant district attorney that "the defendant is one of the most ruthless criminals in the United States," and that "he has an organization behind him." We do not agree with the Commonwealth that the jury could infer that the defendant had a criminal organization behind him because of the defendant's method of testifying and the presentation of his alibi.

There is no merit in defendant's claim that a new trial should be granted because the charge of the court misquoted the testimony. It was the duty of the defendant to ask the court to correct any misstatement before the jury retired.

As the facts developed in this case, there was no error in permitting the Commonwealth to cross-examine the alibi witness of the defendant by asking if she was a married woman. The fact that she was a married

woman associating much with the defendant showed something of her interest in the defendant, to whom she was not married, and thus a possible interest in his acquittal.

Judgment reversed and a new trial ordered.