Commonwealth *v.* Carter, Appellant.

246

Argued June 15, 1966. Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

*Leonard Packel,* Assistant Defender, with him *Herman I. Pollock,* Defender, for appellant.

*John A. McMenamin,* Assistant District Attorney, with him *Joseph M. Smith,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., September 15, 1966:

This appeal is from the judgment of sentence of the Court of Quarter Sessions of the Peace of Philadelphia County. The appellant was found guilty after a jury trial and sentenced to serve five to ten years for the felonious possession and sale of narcotic drugs.

The facts are that on or about October 18, 1965, an undercover agent for the Philadelphia Police force, in the company of an informer and under the surveillance of a federal narcotics agent, went to the corner of 39th and Union Streets in Philadelphia and met the appellant. The undercover agent then purchased three envelopes of narcotics from appellant, who refused to make a direct sale to the agent, but in his presence, sold to the informer, who immediately gave the envelopes to the agent, in appellant's presence.

The informer's identity was not disclosed by the District Attorney's office; his name did not appear as a witness on the indictment and he was not called as a witness at the trial of the case. The appellant did not ask for a Bill of Particulars prior to trial, but did demur at the close of the Commonwealth's case on the ground the Commonwealth had failed to produce or disclose the identity of an eyewitness. The court below overruled the demurrer and held that the Commonwealth need not identify the informer and found that the appellant knew the informer and could have called him had he so desired. The defense was a complete denial; that the appellant was wrongly identified; and that he was not there and never dealt in narcotics.

The two law enforcement officers positively identified appellant at the trial.

The sole question raised on this appeal is whether or not the court below erred in failing to require the Commonwealth to produce or disclose the identity of the informer.

In the Commonwealth of Pennsylvania no rule or policy has been judicially or otherwise determined as to the Commonwealth's right not to disclose the identity of an informer. The duty on the Commonwealth to call witnesses in criminal cases is within the discretion of the District Attorney under the general supervision of the trial judge. *Com. v. Garnett,* 204 Pa. Superior Ct. 113, 203 A. 2d 328 (1964). The need for the assistance of informers in enforcing the law and detecting crimes is the same in Pennsylvania as in the rest of the nation and there exists the same press of public policy not to disclose the identity of informers, under proper safeguards.

The federal rule appears to be as follows, taken from the annotation in U. S. Supreme Court Reports, 1 L. Ed. 2d 1998.

"It is a general rule, subject to certain limitations, but applicable in both criminal and civil cases, that the government is privileged to withhold from disclosure (notwithstanding its relevance) the identity of persons who furnish information relating to violations of law to officers charged with enforcement of that law. The privilege is founded upon public policy, and seeks to further and protect the public interest in effective law enforcement. It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity, encourages them to perform that obligation. The privilege is designed to protect the public interest, and not to protect the informer.

"Where inspection of writings presented to a grand jury is sought, and such writings reveal the identity of a government informer, then the privilege against nonessential disclosure of informers' identity is buttressed by the strong public policy favoring secrecy of grand jury proceedings.

"The privilege against disclosure of the identity of an informer is, of course, as applicable in pretrial proceedings in which the disclosure is sought as at the trial itself.

"§2. Limitations on privilege. (a) Generally. The privilege which protects from disclosure the identity of informers is not applicable in all situations. The United States Supreme Court has said that no fixed rule with respect to disclosure of the identity of an informer is justifiable; that the problem is one that calls for a balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense; and that whether a proper balance renders nondisclosure erroneous must depend upon the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

"There is authority for the proposition that once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"The privilege is also held to be inapplicable where, in claiming it, the government seeks to avoid disclosure of the contents of a communication from the informer, but, in fact, it appears that the contents of the communication will not tend to reveal the informer's identity.

"The most important limitation on the applicability of the privilege of nondisclosure of the identity of an informer arises from the fundamental requirements of

fairness. Thus, it is held that where the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way."

There is a widespread difference of opinion in the cases in the various jurisdictions, some holding that if the informer was a participant, this would create an exception to the public policy rule but others holding that participation alone is not sufficient unless the informer was the sole participant with the defendant or that his testimony was essential, in the discretion of the court, to afford a fair trial. In certain crimes of which narcotics stands at the head of the list there is more reluctance to grant exceptions to the rule.

"American Law Institute, Model Code of Evidence, provides in Rule 230 as follows: 'A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed, or (b) disclosure of his identity is essential to assure a fair determination of the issues.' " 76 A.L.R. 2d 271. See Annotation 76 A.L.R. 262.

The majority holds that the use of the privilege depends on the circumstances of the individual case and rests within the discretion of the court. In the leading case on the informers' privilege, *Roviaro v. U. S.*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, the Supreme Court held that the application of the privilege claimed depended upon the particular circumstances of the individual case. The Court held in that case that: "This is a case where the Government's informer was the sole

participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony . . ."

Cases wherein the disclosure of the identity of an informer or the production of the informer as a witness was required exemplify the limitations on the general rule: Where the informer is the only participant in the illegal act other than the appellant. *Roviaro v. U. S.,* supra; *U. S. v. Ramsey,* 220 F. Supp. 86 and *U. S. v. Clarke,* 220 F. Supp. 905, where the defense raised was entrapment.

In the instant case the informer was not the only person to the transaction other than the appellant; his identity was not necessary to the preparation of the defense; his defense was a complete denial and not entrapment; his identity was known to appellant; the informer did not appear before the grand jury, and was not listed as a witness on the bill of indictment.

We find no abuse of discretion on the part of the court below. The court's charge to the jury was fair and complete as to the Commonwealth's failure to call the informer.

Judgment affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

In my opinion, the lower court erred in refusing, after timely request by defense counsel, to order disclosure of the informer's identity.

The Commonwealth produced only two witnesses to the alleged narcotics sale. Both were police officers who had not previously known the seller. One of the officers observed the transaction only from a distance. They testified that it was the informer who was personally acquainted with the seller and who introduced him to one of the officers. They testified further that it was the informer who made the actual purchase of

narcotics. Although the informer was an immediate participant and an eyewitness to the entire transaction, he was not produced at trial, nor was his name revealed.

Defendant denied any knowledge of the transaction or of the informer's identity.

In these circumstances, with the testimony of the officers and the defendant squarely in conflict, elementary fairness required that the defendant be given access to the testimony of the informer, through revelation of his identity. "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. U. S.,* 353 U. S. 53, 60-61 (1957).

It is true that the informer in *Roviaro* was the sole participant, other than the accused, in the crime charged. That circumstance, however, was not essential to the decision requiring that his identity be revealed. The Court's central concern was clearly that the informer ". . . was the only witness in a position to amplify or contradict the testimony of government witnesses." "[The informer] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity. . . . The desirability of calling [him] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." Id. at 64.

The thrust of *Roviaro,* as later cases have observed, is that an informer's identity must be disclosed whenever his relationship to the events in question is such as to render him a material witness on the issue of defendant's guilt. Thus, in *People v. McShann,* 50 Cal. 2d 802, 808, 330 P. 2d 33, 36 (1958), Justice TRAYNOR noted:

"Disclosure is not limited to the informer who participates in the crime alleged. The information elicited from an informer may be 'relevant and helpful to the defense of the accused or essential to a fair determination of a cause' even though the informer was not a participant. For example, the testimony of an eyewitness-nonparticipant informer that would vindicate the innocence of the accused or lessen the risk of false testimony would obviously be relevant and helpful. . . . Thus, when it appears from the evidence that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal."

Again, in *Gilmore v. U. S.*, 256 F. 2d 565, 567 (5th Cir. 1958), the Court required the disclosure of an informer's identity, even though he did not see the actual transfer of narcotics and heard only part of a critical conversation between defendant and the police officer who made the purchase.

"As [the informer] was a principal actor before and during this performance, who he was and what he knew was certainly material and relevant. In this testimony there might have been the seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truth-finding, which should be the aim of every trial, compelled its disclosure."

In *State v. Oliver* (Superior Court of New Jersey, Appellate Division, No. A-879-64, decided August 23, 1966), a conviction of bookmaking rested largely on testimony by a state trooper that he sat at a bar, in the company of an unnamed informer, and observed a number of persons place bets with the defendant. The Court set aside the conviction on the ground that the prosecution could not, in fairness, refuse to reveal

the identity of an informer who was an eyewitness to the transactions, even though he did not participate in them.

The relevance of these decisions is clear. The Commonwealth, in this case, deliberately withheld the identity of the one man who could resolve the disputed issue of the identity of the narcotics seller. As an eyewitness and a participant, the informer's testimony would have borne directly on the guilt or innocence of the accused. His name should not, therefore, have been concealed. Cf. *Portomene v. U. S.*, 221 F. 2d 582 (5th Cir. 1955) ; *People v. Durazo*, 52 Cal. 2d 354, 340 P. 2d 594 (1959) ; 8 Wigmore, Evidence (McNaughton rev. 1961) §2374, p. 768.

The suggestion in the majority opinion that the defendant knew the informer's identity, and hence was not prejudiced by its nondisclosure, is disingenuous. It assumes the very fact in issue—that the defendant was indeed present when the sale was made, and, therefore, must have known the man with whom he dealt. The circuity of such reasoning is apparent. Cf. *People v. McShann*, 50 Cal. 2d 802, 806, 330 P. 2d 33, 35 (1958).

I agree with the majority that the public interest would be served by preserving the anonymity of an informant who simply points to the suspected illegal activities of another. When, however, the informant's role embraces observation of, and actual participation in, the particular acts of which the defendant stands accused, he becomes a material witness on the issue of guilt. In that event, the policy favoring nondisclosure must give way to the necessity of according a fair trial to the defendant. *State v. Oliver*, supra.

I would reverse.

JACOBS, J., joins in this dissenting opinion.