Commonwealth *v.* Carter, Appellant.

Argued April 18, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Herman I. Pollock,* Defender, with him *Leonard Packel,* Assistant Defender, and *Martin Vinikoor,* First Assistant Defender, for appellant.

*John A. McMenamin,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, September 26, 1967:

Pennsylvania decisions have long recognized that in criminal trials the prosecution is not absolutely bound

to call to the stand all available and material eyewitnesses. *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A. 2d 236 (1967); *Commonwealth v. Horn,* 395 Pa. 585, 150 A. 2d 872 (1959); *Commonwealth v. Palermo,* 368 Pa. 28, 81 A. 2d 540 (1951); *Commonwealth v. Deitrick,* 221 Pa. 7, 70 Atl. 275 (1908).[1] On the other hand, a number of decisions clearly indicate that when the Commonwealth does not call to the stand such an eyewitness, it must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to procure the witness unaided. *Commonwealth v. Giacobbe,* 341 Pa. 187, 19 A. 2d 71 (1941); *Commonwealth v. Karamarkovic,* 218 Pa. 405, 67 Atl. 650 (1907); *Commonwealth v. Danz,* 211 Pa. 507, 522, 60 Atl. 1070, 1075 (1905).[2] Unquestionably, this latter precept is derived from deeply rooted concepts of the proper role of the prosecution in criminal litigation and of the principles of fair trial. See *Commonwealth v. Palermo,* supra; *Commonwealth v. Cramer,* 168 Pa. Superior Ct. 1, 76 A. 2d 661 (1950). The instant appeal presents to our Court for the first time the question of whether and to what extent a governmental privilege to refrain from disclosing the identity of an informer limits the prosecution's duty to make available to the defense the names and whereabouts of all

---

[1] Accord, *Commonwealth v. Garnett,* 204 Pa. Superior Ct. 113, 203 A. 2d 328 (1964); see *Commonwealth v. Cramer,* 168 Pa. Superior Ct. 1, 76 A. 2d 661 (1950); *Commonwealth v. Sarkis,* 164 Pa. Superior Ct. 194, 63 A. 2d 360 (1949). See generally, The Failure of a District Attorney To Call Eyewitnesses in Criminal Cases in Pennsylvania, 25 Temple L.Q. 344 (1952).

[2] Accord, *Commonwealth v. Cramer,* supra note 1; 25 Temple L.Q. 344, 347 (1952). Compare *Commonwealth v. Drew,* 190 Pa. Superior Ct. 478, 154 A. 2d 285 (1959) with *United States ex rel. Drew v. Myers,* 327 F. 2d 174 (3d Cir.), cert. denied, 379 U.S. 847, 85 S. Ct. 88 (1964).

material eyewitnesses.[3] The issue arises in the following factual setting.

Appellant, Melvin Carter, was indicted for felonious possession and sale of narcotic drugs in January, 1966. At a jury trial in February, 1966 the prosecution's principal witness was Norton Wilder, a Philadelphia policeman. Wilder testified that, while acting as undercover agent on October 18, 1965, he was introduced to Carter by an informer and that appellant sold to the informer in Wilder's presence and for Wilder $36 worth of heroin. LaForrest Russell, an agent for the Federal Bureau of Narcotics, testified that, while sitting in a car parked a half block away, he observed Wilder, appellant and the informer in conversation at the time and place of the alleged sale. Russell stated that although he was unable to see the narcotics transaction, he did recognize Carter. Between October 18, 1965 and appellant's arrest on December 15, 1965 neither Wilder nor Russell had further contact with appellant as far as the record shows. Thus the identification of appellant by both witnesses was based solely on a single meeting.

During the cross-examination of Officer Wilder, appellant's attorney asked him to disclose the name of the informant. An objection to this question by the prosecutor was sustained by the trial judge. Following the close of the Commonwealth's case, the defense moved to have the case dismissed because of the failure of the Commonwealth to provide the defense with the informant's name. This motion was denied.

---

[3] Although under the laws of many jurisdictions the prosecution is in certain circumstances privileged to refrain from disclosing the identity of its informers in criminal trials, see Annot., 76 A.L.R. 2d 262 (1961), neither statute nor appellate decision in Pennsylvania has yet recognized such a privilege. To simplify the issues in this appeal, we have assumed without deciding such a privilege exists.

The defense consisted solely of appellant's claim of mistaken identity, i.e., that Carter had not sold narcotics during the time in question and had never met Officer Wilder prior to his arrest. The trial court called the attention of the jurors to the "unexplained absence of a material witness" and charged them that they might "infer that if he were called and did take the witness stand that he would not testify in such a manner as to help the Commonwealth's case." The jury, however, returned a verdict of guilty and appellant was sentenced to five to ten years imprisonment. After the filing and denial of post-trial motions, the conviction was appealed to the Superior Court. That court, with Judges JACOBS and HOFFMAN dissenting, affirmed the conviction, *Commonwealth v. Carter*, 208 Pa. Superior Ct. 245, 222 A. 2d 475 (1966), and a petition for allowance of appeal to us was filed and granted. We reverse.

In his brief on appeal, appellant relies chiefly on the rule, stated above, requiring the prosecution to provide the defense with the names and whereabouts of all material eyewitnesses and on *Roviaro v. United States,* 353 U.S. 53, 77 S. Ct. 623 (1957).[4] In *Roviaro*

[4] *Roviaro* involved the reversal of a conviction under federal law; the decision was an exercise of the United States Supreme Court's supervisory power over federal courts, rather than a constitutional ruling. See *McCray v. Illinois,* 386 U.S. 300, 87 S. Ct. 1056 (1967). Thus *Roviaro* is not technically binding on us. Nonetheless, the *Roviaro* Court indicated clearly that "fundamental requirements of fairness" played a significant role in its decision, 353 U.S. at 60, 77 S. Ct. at 628. To say the least, such language has a federal constitutional resonance which requires close attention from state courts. Moreover, the widespread adherence to the minimum requirements of *Roviaro* in the courts of our sister states, see Annot., 76 A.L.R. 2d 262, 280 et seq. (1961), coupled with the similarity of the fairness concepts underlying *Roviaro* and the Pennsylvania eyewitness rule, impels us to accept *Roviaro* as highly persuasive authority. The Commonwealth, apparently

the Supreme Court of the United States reversed a conviction for illegal transportation of narcotics because of the government's refusal to disclose at trial the identity of an informer who was a material eye-witness to the alleged illegal act. As in the instant case, the informer in *Roviaro* was the only material witness to the alleged narcotics transaction besides the police and the accused himself. On the other hand, there were several circumstances in *Roviaro* that differ from those present here. To begin with the government admitted in *Roviaro* that the informer, when confronted with the accused at the police station following the accused's arrest, denied having met the accused before. Secondly, none of the four policemen who testified against Roviaro was in a position both to see and hear the entire narcotics transaction as was Officer Wilder. Thirdly, the accused did not testify in *Roviaro,* so that it is not certain whether the testimony he would have sought from the informer would have tended to establish mistaken identity, entrapment or some other defense. Finally, in *Roviaro* there is a suggestion that the police officers had been acquainted with the accused previous to the alleged narcotics transaction so that there identification did not depend on a single observation of the accused.

It is readily apparent that the first two of the above circumstances in *Roviaro* make the testimony of the informer there more material to the defense in that case than in the instant one and that the latter two make the testimony less so. Thus a close analytical comparison of the facts of each case seems unlikely to yield a clear suggestion as to how the instant case should be decided were *Roviaro* controlling law. Far more significant to our consideration, we believe, are

recognizing these considerations, does not urge us to ignore *Roviaro* merely because that decision was not reached by a constitutional route.

the following statements by the Supreme Court of the United States of the principle under which *Roviaro* was decided: "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. . . .

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Footnotes omitted.) 353 U.S. at 60-62, 77 S. Ct. at 628-29.[5]

Those aspects of the *Roviaro* test which concern the value of the informer's testimony to the accused point clearly toward reversal of the appellant's conviction. Thus, it may hardly be gainsaid that disclosure of the informer's identity would be "relevant and helpful to the defense." Similarly, in light of the limited opportunity which Officer Wilder and Agent Russell had to observe the narcotics seller in the transaction alleged and in light of the questionable reliability of such identification evidence based on a single observation,

---

[5] The adherence of the Supreme Court to this formulation of the rule was substantially reaffirmed in *McCray v. Illinois*, 386 U.S. 300, 311, 87 S. Ct. 1056, 1062 (1967). See also *Rugendorf v. United States*, 376 U.S. 528, 537, 84 S. Ct. 825, 830 (1964) (dissenting opinion).

cf. *United States v. Wade*, 388 U.S. 218, 228-32, 87 S. Ct. 1926, 1933-35 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S. Ct. 1951 (1967), we believe that a "consideration" of "the possible defenses" and of "the possible significance of the informer's testimony" weigh the balance heavily in favor of reversal. For much the same reasoning, we have little doubt that the Pennsylvania rule requiring the prosecution to make the names and whereabouts of *material* eyewitnesses available to the defense, at least when considered in isolation, requires reversal of the instant conviction.

In an able and exceptionally literate brief, the Commonwealth seeks to distinguish *Roviaro* and to show that law enforcement experience, especially that since the decision in *Roviaro* in 1957, justifies an extremely restrictive reading of the case and of our established Pennsylvania rule. We shall consider each of these arguments in some detail.

In our view the only significant distinction between *Roviaro* and the instant case upon which the Commonwealth relies· is the fact that in the instant case the informer was not the only eyewitness to the entire transaction whereas in *Roviaro* he was. The Commonwealth argues that the significance of this distinction is substantiated by three lower federal court decisions interpreting *Roviaro*: *United States v. Coke*, 339 F. 2d 183 (2d Cir. 1964); *United States v. Simonetti*, 326 F. 2d 614 (2d Cir. 1964) (per curiam); and *Washington v. United States*, 275 F. 2d 687 (5th Cir. 1960). In our view, however, the decision of none of these cases turns directly on the "sole eyewitness" distinction. Thus in *Coke* the informer merely introduced the government agent to the defendant who was identified by witnesses other than the police, and the *informer* did not observe the entire transaction;[6] in *Simonetti* the

---

[6] In addition, the nondisclosure ruling in *Coke* was based in part on the defense's procedural default. It should also be noted

court failed to describe the circumstances which led it to hold the informant's testimony would have been merely "cumulative" and therefore that his identity need not be revealed; in *Washington* the informer's identity had apparently been revealed to the defense and the sole issue was whether the government was itself required to call him to the witness stand. Considered apart from recent federal interpretations of the rule, we believe the fact that police had a somewhat better opportunity to observe the alleged crime and its perpetrator here than in *Roviaro* is not a circumstance sufficient to justify nondisclosure in the instant trial.[7] Elemental to our concept of fairness, as well as that embodied in the federal constitution, is the awareness that the testimonial perspective of police officers is conditioned by the "often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948). This awareness makes us reluctant to permit the establishment of facts crucial to criminal guilt solely by police testimony based on a single observation *where testimony from a more disinterested source is available.* Thus, while disclosure might not be necessary in a case where police evidence as to crucial facts was corroborated by

that the appellant's conviction in *Coke* was reversed and hence its discussion of the nondisclosure rule is dictum. In *United States v. Russ,* 362 F. 2d 843 (2d Cir.), cert. denied, 385 U.S. 923, 87 S. Ct. 236 (1966), cited by the Commonwealth in a slightly different context, the Court of Appeals held nondisclosure proper in circumstances which differ significantly from the instant case in that the informer did not witness the entire transaction.

[7] Writing for the majority of the California Supreme Court, which has decided a relatively large number of disclosure cases, Chief Justice TRAYNOR indicated that the mere fact that an alleged narcotics sale was made to the informer is sufficient to require disclosure of his identity, *People v. McShann,* 50 Cal. 2d 802, 806, 330 P. 2d 33, 35 (1958). See also *Gilmore v. United States,* 256 F. 2d 565 (5th Cir. 1958); *People v. Durazo,* 52 Cal. 2d 354, 340 P. 2d 594 (1959).

neutral witnesses, we are unwilling to do so in a case like the instant one.

The other distinctions relied upon by the Commonwealth are: (1) that Carter, unlike Roviaro, failed to show what the relevance and helpfulness of the informer's testimony would be; (2) that "the issue of entrapment, so important to the holding of *Roviaro* was never at issue here"; and (3) that any prejudice caused to Carter by the failure to disclose the informer's identity was cured by the jury charge concerning the absence of a material witness, whereas no such charge was given in *Roviaro*. As to the first asserted distinction, we believe that the Commonwealth is simply wrong in its conclusion that informer's testimony in *Carter* need not be deemed as relevant and helpful as that in *Roviaro*. Indeed, since Carter took the witness stand and established the nature of his defense, whereas the nature of Roviaro's defense was left open to conjecture, we believe that the relevance and helpfulness of the testimony sought by appellant was clearer than that sought by Roviaro. The fact that entrapment was a possible defense in *Roviaro* and not here hardly seems to us to have a bearing on the materiality of the informer's testimony; the Commonwealth's brief fails to explain why a defense of entrapment, as opposed to one of mistaken identity, more clearly requires the revelation of all available and material eyewitness testimony. Finally, in our judgment, the jury instruction here falls pitifully short of being an adequate substitute for the testimony of the informer. This conclusion is strongly supported by the absence from similar federal and state decisions of any suggestion that the prejudice of nondisclosure of an informer may be so cured. For, given the widespread recognition by courts that nondisclosure of the identity of informers is of immense value to law enforcement authorities in the successful prosecution of many

types of crime, we have little doubt that substitution of a corrective instruction for nondisclosure would long ago have become standard practice in cases like the instant one if indeed it comported with requirements of fair trial.

More troublesome than the Commonwealth's attempt to distinguish *Roviaro* from the instant case, is its policy argument in favor of the maximum restriction of the disclosure rule. Relying in part on the report of President Johnson's Commission on Law Enforcement and Administration of Justice, "The Challenge of Crime in a Free Society", the Commonwealth insists that the use of informers is a virtually indispensable adjunct to the enforcement of the narcotics laws. This, it is argued, is because narcotics offenses are "consensual", i.e., crimes in which the "victim" is a willing participant, and in which, therefore, no person is likely to initiate a police investigation as is the victim or the family of a victim of murder, rape or robbery. Thus it is only someone involved in the narcotics traffic, as an addict or otherwise, who is able to provide enforcement authorities the initial information without which they would be helpless. Disclosure of the identity of an informer, not only terminates his usefulness to police, the Commonwealth continues, but also inhibits other individuals from becoming informers, because of the retribution often visited on disclosed informers by their criminal associates. This fact combined with the other difficulties of enforcing the narcotics laws, concludes the Commonwealth, requires a broader privilege to withhold disclosure of an eyewitness informer in narcotics trials than would normally obtain.

The defect in this argument of the Commonwealth is that it overlooks one fact of overwhelming importance. That fact is the complete lack of justification for reducing the stringency of fair-trial safeguards for

certain defendants merely because of the type of crime with which they are charged. Because of this lack of justification, we find it impossible to accept the contention that the peculiar problems surrounding enforcement of the narcotics laws should play a part in our determination of the scope of the prosecution's duty to disclose to the defense the identity of material eyewitnesses having knowledge of facts crucial to guilt or innocence.[8]

Finally, it is urged that disclosure should not be required because it will in no event aid the defendant. This is true, contends the Commonwealth, because informers themselves are invariably addicts or persons with provable criminal backgrounds, and thus their testimony can be completely discredited before the trier of fact. We do not believe, however, that our notions of jurisprudence permit the prosecution to be the arbiter of the value to the defense of the testimony of a prospective witness. Under an adversary system of justice, each side is deemed uniquely suited to determine whether the testimony of a particular witness will advance its cause.

Judgment reversed and a new trial granted.

---

[8] Compare *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056 (1967).