## Commonwealth v. Rosas

*C. Daniel Higgins,* Assistant District Attorney, for Commonwealth.

*Ronald E. Nican,* Public Defender, and *Louis M. Natali, Jr.,* of *Segal, Appel & Natali,* for defendant.

MARSH, J., August 29, 1974.—At April term, 1973, no. 70, defendant was indicted for the sales of marijuana to Fred Klee on November 9, 1972.

At April term, 1973, no. 69, defendant was indicted on count No. 1 for carrying a concealed deadly weapon and on count No. 2 for possession of marijuana with intent to deliver.

The trial was held before a jury on October 8, 1973.

Fred Klee, a member of the Pennsylvania State Police, testified in substance that he first met a man named Randy Rayback or Roback in the afternoon of November 9, 1972; that Mr. Drozdowski, a member of the Pennsylvania State Police, had arranged for him to meet Randy; that on that date, at about 7:30 p.m.,

Randy talked to Rosas and made an appointment to meet Rosas that night in the parking lot at defendant's home in East Stroudsburg; that on that evening about 8 p.m., he and Randy met defendant in the parking lot of the apartment house wherein defendant resided; that he, Randy and defendant entered defendant's apartment and, after entering defendant's apartment, he purchased from defendant one quarter pound of marijuana for $65, at which time defendant put the marijuana in a brown paper bag; that they were in the apartment about 15 minutes; that at the time of the sale there was present in the apartment in addition to defendant and Randy, defendant's wife, a young child, another woman that the witness Klee did not know and a small baby; that he and Randy left the apartment with the marijuana in a bag; that he took Randy back to Bushkill; that Randy got out of the car at about 8:30 p.m.; that the next day, November 10, 1972, he met Randy at Tamiment and took him to the public highway known as Interstate 80 in the Stroudsburg area and dropped Randy off at about 1:30 p.m.; that Randy had asked the witness Klee for a lift to Interstate 80 so he could hitchhike; that sometime before the time of the purchase of the marijuana, the witness Klee told Randy that he was a member of the Pennsylvania State Police; that the first time the witness Klee ever met Rosas was at the time that he purchased the marijuana.

The testimony of Trooper Klee and other Pennsylvania State Troopers showed that on December 13, 1972, the State Troopers went to the apartment of defendant in East Stroudsburg; that they had a warrant for the arrest of defendant and also a search warrant to search defendant's apartment; that defendant's wife opened the door; that one of the troopers stepped inside and announced that they were members

of the State Police; that defendant kicked and flailed with his arms and, therefore, it was necessary for the State Police to subdue him and handcuff him; that then a search was made of the clothing of defendant and a switchblade knife was found in his pocket.

Defendant testified that Trooper Klee and Randy came to his apartment about 10 p.m. on the night of November 9, 1972, and remained there for about ten minutes; that Trooper Klee and Randy asked for marijuana and defendant told them that he had none; that he never sold any marijuana to Trooper Klee, and that his wife was present when Trooper Klee and Randy came to his apartment. Defendant also testified that Trooper Drozdowski gave him Randy's last known address; and that he attempted to locate Randy without success. Defendant also testified that he had been acquainted with Randy prior to November 9, 1972, having met him on two occasions when Randy came to defendant to have repairs to his automobile.

Defendant's wife testified that she was present in the apartment on November 9, 1972, when Trooper Klee and Randy came there and asked for marijuana. She also testified that defendant did not sell or furnish any marijuana to the Trooper Klee on this occasion.

Prior to trial, defendant filed a motion to suppress the evidence consisting of marijuana and the knife. A hearing on that motion was held on August 2, 1973. The court decided that the search warrant was invalid, suppressed the marijuana found pursuant to the search warrant, and refused to suppress the knife.

After the close of the evidence, the court sustained defendant's demurrer to the charge of carrying a concealed deadly weapon. Defendant had entered the demurrer at the end of the Commonwealth's evidence and at that time the court had reserved decision on the demurrer.

The jury returned a verdict of guilty on the indictment to April term, 1973, no. 75, charging a sale of marijuana.

In this case, defendant has filed a motion for a new trial and a motion in arrest of judgment. In support of these motions, defendant has cited the following decisions: Roviaro v. U.S.A., 353 U. S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623, and Commonwealth v. Carter, 427 Pa. 53. In the Roviaro case mentioned above, defendant was charged with having sold heroin to "John Doe," an informer, and the second count charged defendant with transporting heroin. Before the trial, defendant filed a motion for a bill of particulars requesting the name, address and occupation of "John Doe." This request was denied by the trial court. Defendant was convicted on a trial without a jury. The United States Supreme Court held it was reversible error to refuse to grant defendant's request for the name, address and occupation of "John Doe."

In the case of Commonwealth v. Carter, 427 Pa. 53, defendant was indicted for felonious possession and sale of narcotic drugs. A police officer and an informer were witnesses to the sale. At the trial, during the cross-examination of the police officer by defendant's attorney, he was asked to disclose the name of the informer. The prosecutor objected to this question and the trial judge sustained the objection. After the close of the Commonwealth's case, the defense moved to have the case dismissed because of the failure of the Commonwealth to provide the defense with the name of the informer. The trial court denied this motion. The jury returned a verdict of guilty. The Supreme Court reversed the judgment and granted a new trial, holding that it was reversible error to refuse to allow the cross-examination by defendant's attorney regarding the name of the informer.

In the case before this court, the trial court did not refuse to require the Commonwealth to disclose the identity of the informer, Randy Rayback. The evidence shows that the State Police actually gave defendant the last known address of Randy Rayback. The evidence indicates that defendant had a greater opportunity to learn the identity of Randy Rayback than did the Officer Klee, since defendant had met Randy on at least two occasions before the sale of the marijuana to Officer Klee. Therefore, the Roviaro case mentioned above and the Carter case mentioned above are not authority to sustain defendant's motions. However, defendant wants this court to extend the doctrine enunciated in the Roviaro case and the Carter case and to hold that the Commonwealth is legally obligated to "ensure the whereabouts" of a witness to the transaction and, if the Commonwealth fails to do so, that the defendant is entitled to have the prosecution dismissed.

The court will not hold, as requested by the defendant, for the following reasons:

1. Defendant does not cite any legal authority which supports such a holding.

2. There is no valid reason for the court to so hold.

3. As a practical matter, it would be impossible or next to impossible for the Commonwealth to "ensure the whereabouts" of the witness. To ensure the whereabouts of a witness, it would be necessary for the district attorney to hire detectives to follow the witness to keep informed of his whereabouts or to incarcerate the witness.

Defendant complains about the fact that the State Policemen provided transportation for Randy from Tamiment to Interstate 80. No doubt if the policemen had not provided this transportation, Randy would

have obtained other transportation. There was no evidence to indicate that the State Policemen induced or persuaded or influenced Randy to leave this area, if he did leave this area.

There is no question regarding the identity of defendant. Defendant, as well as his wife, admit that Klee was at their home on the night of the alleged sale.

It would not serve the ends of justice to permit a defendant to go free because the whereabouts of a witness is unknown.

Defendant contends that the court's refusal to suppress the evidence, i.e., the knife, in the case charging possession of a concealed deadly weapon, was error because the knife was obtained illegally by the police in that both the search warrant and the arrest were illegal, and that refusal to suppress the evidence was prejudicial to defendant because it permitted a trial of defendant on the concealed weapon charge (which trial would not have been held if the evidence had been suppressed) which required the evidence of four members of the Pennsylvania State Police, which number was greater than the number of witnesses that could have been permitted on the trial of the marijuana case, and that this number of State Policemen influenced the jury in its verdict on the marijuana charge.

The evidence shows that the State Police arrested defendant pursuant to a warrant for the arrest of defendant issued by a magistrate. The validity of this warrant was never contested by defendant. At the time of his arrest, defendant flailed his arms and kicked at the police. After defendant was subdued and handcuffed by the police, the police searched defendant's clothing and found a switchblade knife in his pocket.

The arrest was lawful because it was made pursuant

to a warrant for the arrest of defendant. The search of defendant's outer clothing was lawful because it was incident to a lawful arrest: Commonwealth v. Rota, 222 Pa. Superior Ct. 163 (1972); Commonwealth v. Sharpe, 449 Pa. 35 (1972).

With the view expressed, we see no error for the court to proceed to try defendant on the charge of concealing a deadly weapon.

Defendant contends that he was prejudiced in the trial of the marijuana case where the jury rendered a verdict of guilty, because the number of State Policemen who testified for the Commonwealth in the concealed weapon case influenced the jury in favor of the Commonwealth. Whether the number of State Policemen influenced the jury is pure conjecture on the part of defendant. It was just as likely that the number of State Policemen generated sympathy for defendant, if it had any effect at all.

Defendant did not request separate trials on the marijuana indictment and the concealed weapon indictment. Defendant will not be permitted to sit by without requesting separate trials, await the outcome of a consolidated trial, and then, after being found guilty, complain that he was prejudiced by the consolidated trial.

The court believes the evidence is sufficient for a jury to find all the elements of both crimes beyond a reasonable doubt and, therefore, makes the following

## ORDER

And now, August 29, 1974, defendant's motion in arrest of judgment is denied. Defendant's motion for a new trial is denied. Defendant is directed to appear before the court on September 9, 1974, at 3 p.m., in Court Room No. 2, Court House, Stroudsburg, Monroe County, Pa., for sentencing.