J-S63039-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,  :    IN THE SUPERIOR COURT OF
                                   :           PENNSYLVANIA
             Appellee      :
                                   :
          v.               :
                                   :
DWAYNE MOORE,            :
                                 :
            Appellant     :      No. 2988 EDA 2018

Appeal from the Judgment of Sentence Entered September 18, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002719-2017

BEFORE:  GANTMAN, P.J.E., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:      **FILED JANUARY 17, 2020**

Dwayne Moore (Appellant) appeals from the September 18, 2018 judgment of sentence of five years of probation following his nonjury convictions for possession with intent to deliver (PWID) and criminal use of a communication facility. Specifically, Appellant challenges the orders denying his motion to suppress and motion to disclose the identity of the confidential informant (CI). Upon review, we affirm.

By way of background, in January 2017, Philadelphia police initiated a drug-dealing investigation after the CI notified officers that "Wiz," later identified as Appellant, was dealing heroin and marijuana at 6026 North Warnock Street.[1] N.T., 7/9/2018, at 9-17, 27-28.

---

[1] The CI informed police that Joe Williams lived at this residence; Appellant lived across the street at 6033 North Warnock Street. N.T., 3/13/2018, at
*(Footnote Continued Next Page)*

* Retired Senior Judge assigned to the Superior Court.

As part of the investigation, Officer Greg Stevens set up three controlled buys – January 9, January 10, and January 19 – for the CI to purchase marijuana and heroin from Appellant. Prior to each buy, the CI dialed the same phone number to set up the deal.[2]

On January 9, 2017, the CI called the designated phone number to set up a controlled buy of marijuana and was directed to 6026 North Warnock Street by the individual who answered the phone. The CI was searched and provided prerecorded buy money before proceeding to 6026 North Warnock Street, along with a surveillance team. The CI knocked on the door of the residence and was let inside. Within a few minutes, Appellant arrived and walked inside without knocking. A few minutes after that, the CI and Appellant exited together and entered a vehicle. The vehicle drove a half block and stopped. Special Agent Coleman, who was stationed nearby in a van, observed a hand-to-hand transaction between Appellant and the CI in that vehicle. The CI then returned to Officer Stevens with the marijuana. N.T., 3/13/2018, at 37-41.

On January 10, 2017, officers set up surveillance outside 6026 North Warnock Street and Officer Stevens searched the CI in anticipation of a

_(Footnote Continued)_ ───────────

36-37; N.T., 7/9/2018, at 27-28. Based on this information, police presented a photograph of Appellant to the CI, who identified Appellant as Wiz. N.T., 3/13/2018, at 76-77.

[2] This telephone number was connected to a cell phone that was confiscated from Appellant's person following his arrest on February 6, 2017. N.T., 7/9/2018, at 19-20.

second controlled buy. Once surveillance was in place, the CI called the designated number to purchase the same amount of marijuana. The CI was again directed to 6026 North Warnock Street. Shortly after the call ended, Appellant arrived at 6026 North Warnock Street and let himself inside using a key. Minutes later, the CI approached, knocked, and was let inside. After approximately five minutes, the CI left the residence and returned to Officer Stevens with the marijuana. *Id.* at 49-50, 53.

On January 19, 2017, Officer Stevens had the CI set up a controlled buy for heroin. Again, the CI was searched and given prerecorded buy money. The CI called the same phone number and was directed to 6026 North Warnock Street. The CI went to the residence, knocked, and was let inside. Shortly thereafter, Appellant exited the residence, entered a vehicle, and drove away. Appellant returned approximately ten minutes later and reentered 6026 North Warnock Street. Two minutes later, the CI returned to Officer Stevens with the heroin. *Id.* at 54-55.

On February 6, 2017,[3] Officer Stevens set up surveillance outside 6026 and 6033 North Warnock Street. This time, the CI called the same phone number to set up a purchase of 12 bundles of heroin. The CI was directed to Fern Rock train station. Once the CI was in place at the station, the CI

---

[3] Officer Stevens did not set up a controlled buy after January 19, 2017, because the CI informed him that Williams was in the hospital and that Appellant would therefore not be selling drugs from 6026 North Warnock Street. N.T., 3/13/2018, at 59.

- 3 -

called the same phone number again. Two minutes later, Appellant exited 6026 North Warnock Street and entered the front passenger seat of a vehicle. Two minutes after that, the vehicle arrived at Fern Rock train station. The driver of the vehicle backed into the corner of the station's lot and parked. Appellant exited the vehicle and looked around the parking lot while holding a cell phone to his ear. At the same time, the CI's phone rang, displaying the number the CI had called every time to set up a deal with Appellant. Appellant reentered the vehicle, and officers approached to arrest Appellant. *Id.* at 60-61; N.T., 7/9/2018, at 22-23, 50, 69.

Officer Yearges parked his unmarked vehicle in front of Appellant's vehicle. Officer Yearges then turned on his police lights and exited his vehicle. Appellant immediately fled. Officer Yearges gave chase, displaying his police badge on his belt and yelling "police" while directing Appellant to stop. Appellant continued to flee, throwing a plastic bag onto the railroad tracks as he ran. Officer Yearges was eventually able to trip Appellant, causing both Appellant and Officer Yearges to fall onto the pavement and end the foot chase. Appellant continued to struggle, swinging his elbows and jamming his right hand into his pocket. Officer Yearges was finally able to subdue Appellant after punching him in the kidney area twice. Once Appellant was handcuffed, Officer Yearges recovered a knife from Appellant's pocket, along with, *inter alia*, Suboxone strips, money, and the aforementioned cell phone. N.T., 7/9/2018, at 23-24, 69-72. Officer

Stevens retrieved the plastic bag from the railroad tracks that Appellant had thrown; it contained 12 bundles of heroin. *Id.* at 24.

Appellant was arrested and charged with multiple drug-related offenses stemming from both the January narcotics investigation and the events of February 6, 2017. Prior to trial, Appellant filed a motion to suppress and motion to disclose the identity of the CI. *See* Omnibus Pre-Trial Motion, 5/8/2017; Motion for Disclosure of CI, 1/12/2018. On March 13, 2018, the trial court held a hearing on the CI motion. Officer Stevens and defense expert David Leff testified. Appellant argued that disclosure was material to his defenses of misidentification and fabrication. On March 28, 2018, the trial court denied Appellant's motion because of the availability of other witnesses, and other means of proving fabrication. *See* N.T., 3/28/2018, at 3-5.

As to Appellant's suppression motion, the trial court incorporated the testimony from the March 13, 2018 hearing and heard argument from counsel. *Id.* at 5-27. Appellant argued that (1) the items recovered from his person should be excluded because the officers lacked reasonable suspicion to stop or probable cause to arrest; and (2) the bag of heroin should be excluded because he was forced to abandon it. *Id.* at 6, 8.

On April 6, 2018, the trial court denied Appellant's motion to suppress. The trial court found that the officers "had the requisite probable cause to arrest [Appellant] on February 6th from the cumulative effect of their multi-

day surveillance[,]" and therefore there was no forced abandonment of the heroin. N.T., 4/6/2018, at 8. The trial court emphasized that Appellant's arrest was not the result of "an anonymous flash, but the product of a long and involved surveillance[.]" *Id.*

On July 9, 2018, Appellant proceeded to a nonjury trial, where the aforementioned facts were developed. The trial court found Appellant not guilty of the offenses related to the January 2017 controlled buys, and guilty of PWID and criminal use of a communication facility as to the events of February 6, 2017. On September 18, 2018, the trial court sentenced Appellant to concurrent five-year terms of probation. Appellant did not file post-sentence motions.

This timely-filed notice of appeal followed.[4] On appeal, Appellant presents two issues for this Court's consideration. We begin with Appellant's claim that the trial court erred in denying his motion to suppress.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of

---

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017), *quoting* *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

On appeal, Appellant claims that the trial court's denial of his motion to suppress the heroin[5] and items recovered from his person was in error where the police did not establish probable cause to seize Appellant. Specifically, Appellant claims that the information used by the officers was "stale and uncorroborated information given by an informant of unproven reliability and credibility[.]" Appellant's Brief at 3, 12.

This Court has defined probable cause as follows.

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [seizure], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a **probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

---

[5] If the police did not have probable cause to seize Appellant, then the heroin would be considered forcibly abandoned and be subject to suppression under *Commonwealth v. Matos*, 672 A.2d 769 (Pa. 1996).

***Commonwealth v. Bozeman***, 205 A.3d 1264, 1277 (Pa. Super. 2019) (citations omitted; emphasis in original).

At the hearing on Appellant's suppression motion, the parties incorporated the testimony from the CI motion. At that hearing, Officer Stevens testified regarding the overarching narcotics investigation, as detailed *supra*, which began when the CI notified police that "Wiz" was selling marijuana and heroin from a specific phone number out of 6026 North Warnock Street. N.T., 3/13/2018, at 36. Throughout the ensuing investigation, the police solely used this CI to set up controlled buys and communicate with Wiz. ***Id.*** at 33-34. Officer Stevens testified that the investigation corroborated every part of the CI's tip: the type of drugs being sold, the address out of which they were being sold, and the number utilized to reach Wiz. Prior to the first buy, the CI identified Appellant as Wiz. On January 9, 10, 19, and February 6, Officer Stevens and his surveillance team observed Appellant as detailed *supra*. ***Id.*** at 76-77, 89.

This specific CI had worked with Officer Stevens on numerous occasions and always proved reliable. ***Id.*** at 74-75. According to Officer Stevens, this CI was still in use and had "provided probably thousands of arrests for the city and federal government." ***Id.*** at 75. Officer Stevens also testified regarding his extensive narcotics experience. Specifically, he participated in numerous narcotics trainings during his 24 years as a military police officer with the United States Marines Corps, was part of the Cambria

County and Somerset County Drug Task Force as a police officer in Johnstown, had been a narcotics officer with the Philadelphia police since 2007, and currently worked as part of the FBI Violent Gang and Drug Task Force. Officer Stevens recounted that he had received both state and federal narcotics training, explaining that he "had just about all the training there is for a narcotics officer in Philadelphia." *Id.* at 73-74.

Finally, Appellant called Leff as an expert in packaging, usage, and methodology of distribution of narcotics. *Id.* at 96. Leff testified that, based on his experience, on both January 9 and January 10, the CI paid $100 for $40 worth of marijuana; on January 19, the CI paid $80 for $140 worth of heroin; and on February 6, the CI was to pay $850 for $840 worth of heroin. *Id.* at 97-101. Thus, he contended the CI paid too much on the first two controlled buys, paid too little on the third controlled buy, and was set to pay the correct street value on the final, largest buy. According to Appellant, this demonstrated the unreliability of the CI and supported his claim of fabrication by Officer Stevens.

In denying Appellant's suppression motion, the trial court concluded that the police had probable cause to seize Appellant.

> The police officers already had independent probable cause to arrest Appellant at the time they approached him, as a result of a long and involved police surveillance, including Appellant's phone ringing while the CI and Appellant telephoned each other to effectuate the final buy at the transportation center. Even if the [] flight was provoked, the officers at this point had more than enough probable cause to seize Appellant before he

discarded the evidence onto the train tracks, abandoning the evidence.

Trial Court Opinion, 3/29/2019, at 11.

Based upon our review of the record, we agree with the trial court that Officer Yearges had probable cause to arrest Appellant and pursue him when he fled in light of Officer Stevens's testimony regarding the overall narcotics investigation. Contrary to Appellant's assertion, the trial court's conclusion was not based only on information received from the CI, but on the direct observations of Officer Stevens and his surveillance team. Accordingly, the trial court did not err in denying Appellant's suppression motion.

We now turn to Appellant's second issue: whether the trial court erred in denying Appellant's motion to disclose the CI's identity "where Appellant showed the information sought was material to the defense and the discovery request was reasonable, and where the Commonwealth failed to demonstrate any specific reason for non-disclosure[.]" Appellant's Brief at 3. We consider this mindful of the following.

> Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion. Indeed, where the informant was an eyewitness to the transaction in question, the role of the trial judge's discretion is established by rule of court.

***Commonwealth v. Withrow***, 932 A.2d 138, 140 (Pa. Super. 2007) (citations omitted). This rule provides, in pertinent part, as follows.

> (a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for

- 10 -

pretrial discovery, the court **may** order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

> (i) the names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 573(B)(2)(a)(i) (emphasis added).

This Court has adopted the guidelines articulated by the United States Supreme Court in ***Roviaro v. United States***, 353 U.S. 53[] (1957), to guide trial courts in the exercise of their discretion in cases where, as here, the defendant requests the identity of a confidential informant who is also an eyewitness:

> We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.

***Commonwealth v. Carter***, [] 233 A.2d 284, 287 ([Pa. ]1967), (quoting ***Roviaro***, [353 U.S.] at 60-62[]).

In ***Carter***, this Court held that the balance tips in favor of disclosure where guilt is found solely on police testimony based on a single observation, where testimony from a more disinterested source, such as the informant, is available. However, where other corroboration of the officer's testimony exists, disclosure of the informant's identity is not necessarily required. This Court also recognized the importance of the Commonwealth's qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement. Also, the safety of the confidential informant is a controlling factor in determining whether to reveal his identity.

- 11 -

Further, before an informant's identity may be revealed, the defendant must establish pursuant to Pa.R.Crim.P. 305(B) that the information sought is material to the preparation of the defense and that the request is reasonable. Only after a showing by the defendant that the information sought is material and the request reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed.

*Commonwealth v. Bing*, 713 A.2d 56, 58 (Pa. 1998) (some citations omitted).

Although the defendant need not predict exactly what the informant will say, he must demonstrate at least a reasonable possibility the informant's testimony would exonerate him. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

*Withrow*, 932 A.2d at 141 (citations and quotation marks omitted).

At the hearing on the CI motion, Officer Stevens and Leff testified as detailed, *supra*. Appellant argued that disclosure of the CI's identity was material to his defense of misidentification and police fabrication. Specifically, Appellant argued that Officer Stevens was fabricating the drug deals because Appellant was innocent, Officer Stevens's testimony contained inconsistencies and details beyond what was included in police reports, and Officer Stevens could not provide the names of every officer on his surveillance team. As such, Appellant argued that the CI was the only person who could say who sold the CI the drugs in January. N.T., 3/13/2018, at 109-116, 127.

- 12 -

In denying Appellant's motion, the trial court concluded that Appellant failed to meet the threshold burden that disclosure of the CI's identity was material. Specifically the court found as follows.

> Two officers[6] testified to what they observed, which were the result of a long and protracted surveillance by numerous officers taking place over several days, with a hand[-]to[-]hand transaction between [] Appellant and the CI observed by an additional officer, Special Agent Coleman, utilization of the same phone number to conduct the various transactions, with the cell phone recovered from [] Appellant with that phone number, the last and largest transaction involving Appellant appearing at the pre-determined meeting place to effectuate the sale of the narcotics, Appellant and the CI telephoning each other within earshot of the police at the pre-determined meeting place, Appellant then running from the police and throwing the package of narcotics that he was going to sell to the CI over onto the train tracks—all of which provided independent corroboration.
>
> The only testimony Appellant presented on his behalf was that of expert Leff regarding the alleged improper pricing of narcotics, calling into question the CI's reliability. However, where, as here, multiple police officers observed and testified regarding several transactions, the disclosure of the CI was unwarranted.

Trial Court Opinion, 3/29/2019, at 8-9.

As detailed *supra*, Officer Stevens testified to his own narcotics experience, as well as the reliability of the CI. As with Appellant's motion to suppress, Appellant mistakenly conflates Officer Stevens's first-hand observations with information provided solely by the CI. Notably, Officer

---

[6] We note that only one officer, Officer Stevens, testified at the hearing on Appellant's CI motion. It appears the trial court may be confusing the March 13, 2018 hearing with the testimony offered at Appellant's nonjury trial, wherein Officer Stevens, Officer Yearges, and Sergeant Andrew Callahan testified. However, this mistake does not impact our analysis.

Stevens never testified as to who the CI claimed sold him the drugs in January. In fact, Officer Stevens did not testify to any information provided by the CI beyond the initial tip and Williams's hospital stay. Rather, Officer Stevens testified that the investigation corroborated the information provided within that initial tip, and then only provided his own first-hand observations of Appellant's presence and involvement on January 9, 10, 19, and February 6. Appellant failed to demonstrate a reasonable possibility that the CI's testimony was material because other officers also observed the controlled buys from the street and the final confrontation at Fern Rock train station.[7] Accordingly, the trial court did not abuse its discretion in finding that Appellant had failed to meet his threshold burden.

Judgment of sentence affirmed.

---

[7] Insofar as Appellant challenges Officer Stevens's credibility, such a challenge goes to the weight of the evidence. Appellant failed to raise this distinct claim on appeal, and it is therefore not before this Court. Insofar as Appellant is challenging the weaknesses in the Commonwealth's case as to the January controlled buys, the trial court, while finding Officer Stevens's observations sufficient to provide probable cause to arrest, did not find that the Commonwealth had proven the January controlled buys beyond a reasonable doubt. *See* N.T., 7/24/2018, at 2 (finding Appellant not guilty of the January controlled buys because of reasonable doubt about the CI and the amounts). As such, whether the CI's testimony would have been material to the January controlled buys is moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/17/20</u>