J-E01001-15

2015 PA Super 202

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KYLE JORDAN, | |
| Appellee | No. 2832 EDA 2011 |

Appeal from the Order Entered September 1, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014464-2010

BEFORE: BOWES, DONOHUE, SHOGAN, LAZARUS, MUNDY, OLSON, WECHT, STABILE, JENKINS, JJ.

OPINION BY BOWES, J.: **FILED SEPTEMBER 22, 2015**

The Commonwealth appeals from the September 1, 2011 order precluding it from presenting evidence adduced as the result of the execution of a search warrant. The order was entered as a sanction due to the Commonwealth's failure to reveal the identity of a confidential informant used during a controlled-buy. We conclude that the trial court erred in ordering the Commonwealth to reveal the identity of the confidential informant once the Commonwealth entered a stipulation that the defense could introduce into evidence what the confidential informant reported to police and agreed not to rely upon the controlled-buy in support of its pending charge of delivery of a controlled substance. We also conclude that the sanction awarded herein was improper. We therefore reverse.

The pertinent facts are as follows. On September 7, 2010, Philadelphia Police Officer Gary Francis utilized confidential informant number 01241 ("CI-1") to conduct a narcotics investigation at the 2700 block of North Judson Way, Philadelphia. Officer Francis had used CI-1 in drug trafficking investigations on more than ten prior occasions, and in each instance, the collaboration led to the seizure of narcotics as well as arrests. Officer Francis met with CI-1 and, after performing the controlled-buy protocol, followed him[1] to the 2700 block of Judson Way sometime between 3:00 p.m. and 5:00 p.m. Officer Francis observed CI-1 speak briefly with Appellee, enter a row house at 2737 Judson Way with Appellee, and exit that location shortly thereafter. Officer Francis then followed CI-1 away from the view of the 2700 block, and CI-1 handed Philadelphia Police Officer Matthew Beattie two packets of crack cocaine in Officer Francis's presence. After Officers Francis and Beattie entered a vehicle, Officer Francis drove to the 2700 block of Judson Way, where Appellee was still standing. Appellee was identified as being involved in the September 7, 2010 controlled-buy so that Officer Beattie would be familiar with him. N.T. Motion, 7/19/11, at 31.

At 2:10 p.m. on September 8, 2010, Officer Beattie, who had also worked with CI-1 in successful drug interdictions, met with that CI. After

_____

[1] Police specifically declined to identify any CI as either male or female. We utilize the male pronoun throughout the adjudication to refer to a CI solely for purposes of simplifying the narrative.

utilizing the controlled-buy procedure, Officer Beattie observed CI-1 meet with Appellee, who again was standing on the 2700 block of Judson Way. Appellee and CI-1 briefly spoke, and Appellee entered 2737 Judson Way for about one minute while CI-1 waited outside. Appellee then returned to the CI-1, CI-1 handed Appellee money, and, in return, Appellee gave CI-1 "small items." *Id*. at 28. The CI-1 gave the items, which were packets of crack cocaine, to police.

On September 10, 2010, Police Officer Bradford Mitchell met with confidential informant number 01079 ("CI-2"). CI-2 had aided Officer Mitchell in twenty to twenty-five prior drug investigations, all of which had led to the recovery of narcotics and arrests, and he was still being used as a CI. *Id*. at 59. After following the controlled-buy mandates, Officer Mitchell gave CI-2 twenty dollars in buy money and followed him to the 2700 block of Judson Way. Officer Mitchell observed CI-2 engage Appellee as well as a man named James Lofton in a brief conversation, and he saw all three people enter 2737 Judson Way. Within two minutes, CI-2 exited the building and gave Officer Mitchell two pieces of crack cocaine. At that time, CI-2 informed Officer Mitchell that, inside 2737 Judson Way, CI-2 handed Lofton the buy money, Lofton obtained the crack cocaine from underneath a couch, and Lofton handed CI-2 the drug.

Later that same day, on September 10, 2010, police obtained a search warrant for 2737 Judson Way. When the warrant was executed, Appellee

and Lofton were present. Incriminatory items were recovered from both Appellee and Lofton. Additionally, Appellee and Lofton engaged in certain actions in the presence of the officers, and those activities evidenced a conspiracy between them to distribute narcotics.

Appellee was charged with 1) one count of delivery of a controlled substance based upon actions that occurred between September 7, 2010, and September 10, 2010; 2) one count of conspiracy based upon actions that occurred between September 7, 2010, and September 10, 2010; and 3) one count of possession of a controlled substance by an unregistered person based upon actions that occurred between September 7, 2010, and September 10, 2010. Appellee thereafter filed a motion to reveal the identities of the two CIs used in connection with the investigation.

A hearing was held on the motion on July 19, 2011, where the above-delineated specifics were adduced. Additionally, Officer Francis testified that CI-1 lived in the community, had knowledge of the drug trade therein, and was still "in use" in drug investigations. N.T. Motion, 7/19/11, at 13-14. Officer Francis reported that, if the identity of CI-1 was revealed, there might be retaliation, "physical harm being brought to that person or [his] family who are also of this particular community," and the harm could include "[p]hysical, verbal, mental, property damage[.]" *Id*. at 12-13, 15. Officer Mitchell testified that CI-2 frequented the area where the drug purchases occurred and had "family in that area." *Id*. at 43. Officer Mitchell

observed that, if the identity of CI-2 was disclosed, "[s]ome form of bodily injury may happen to this CI or the CI's family." *Id*. at 43-44.

After hearing this evidence, the trial court denied the request to reveal CI-1's name, but granted the motion to reveal the identity of CI-2. The court observed that Officer Mitchell indicated that, after the September 10, 2010 controlled-buy conducted inside the row house, CI-2 told Officer Mitchell that Lofton was the individual who sold him the crack cocaine. The court ruled, "Based upon the testimony of Officer Mitchell in this CI motion, this Court feels that it is necessary for the identity of CI-2 to be revealed as he is the only individual who can provide that information and it would not be hearsay testimony. . . ." *Id*. at 75.

As soon as the court issued the ruling requiring the revelation of CI-2's identity, the Commonwealth amended the delivery charge so that it was no longer premised upon the controlled-buy conducted on September 10, 2010. *Id*. at 76. Additionally, the Commonwealth agreed to stipulate at the scheduled trial that CI-2 told Officer Mitchell that, inside 2737 Judson Way on September 10, 2010, CI-2 gave the buy money to Lofton, Lofton reached inside the couch for the crack cocaine, and Lofton handed the crack cocaine to CI-2. *Id*. at 79.

The trial court then asked the Commonwealth how it could proceed on the conspiracy charge given that Appellee was the only person who was involved in the September 7th and September 8th controlled-buys. The

Commonwealth delineated that it could predicate proof of a conspiracy on what was viewed and recovered during the execution of the search warrant.

The district attorney explained, "I would still keep the conspiracy charge based on what was found on [Lofton] that would be testified to." *Id*. at 77. She continued that the officers who executed the search warrant "will testify as to who was in the house and all the items recovered in the house and on the persons in the house which would be relevant to the conspiracy charge." *Id*. The prosecutor informed the trial court that both Appellee and Lofton were in the house when the warrant was executed on September 10th. Additionally, "Items were recovered from Mr. Lofton that are also relevant to the case in chief as the whole. So the items found in the house as well as the items found on Mr. Lofton and the behavior of [Appellee and Lofton], which will come out at trial, are all relevant" to the conspiracy charge. *Id.* The district attorney concluded that she could go forward as to the conspiracy charge "based on what was seen in the house during the search warrant day, what was recovered, [and] what the officers observed the defendants doing." *Id*. at 79.

The trial court refused to revise its earlier determination that the identity of CI-2 had to be revealed, and, after the Commonwealth failed to comply with that directive, the trial court issued an order on September 1, 2011. It ruled that, as a sanction for the Commonwealth's violation of the July 19, 2011 order to reveal CI-2's identity, the Commonwealth was

precluded from presenting any evidence obtained on September 10, 2010, which included Officer Mitchell's observations on September 10, 2010, as well as items seized and observations made during the execution of the search warrant.

The Commonwealth filed the present appeal pursuant to Pa.R.A.P. 311(d), which is set forth *infra*, since the September 1, 2011 order precluded the Commonwealth from introducing evidence at trial. A panel of this Court affirmed the trial court's decision. *En banc* review was granted, and the matter is now ready for disposition. On appeal, the Commonwealth contends:

> Did the lower court err in suppressing evidence as a sanction for the Commonwealth's refusal to disclose the identity of a confidential informant where the informant was not a prosecution trial witness, and would have been put in danger by disclosure; defendant failed to make a threshold showing that the identity of the informant was material, reasonable, and necessary for the preparation of a planned defense; and the refusal had no reasonable connection with the court's sanction of eliminating all Commonwealth evidence pertaining to the third day of surveillance?

Commonwealth's brief at 2.

The Commonwealth first maintains that the trial court's decision requiring disclosure of the identity of CI-2 was improper. As a preliminary procedural matter, we address whether we can review the propriety of the order requiring disclosure since the Commonwealth did not appeal that order

and instead appealed from the order suppressing evidence based on its violation of that order.

We first discuss the impact of our Supreme Court's pronouncement in **Commonwealth v. Shearer**, 882 A.2d 462 (Pa. 2005). In **Shearer**, the Commonwealth appealed a trial court order that required the minor victim of a sexual assault to submit to a psychiatric examination. The order was entered to aid the trial court in determining the minor's competency to testify. We quashed the appeal as interlocutory, and our Supreme Court reversed.

The Commonwealth argued to the Supreme Court that there were two bases for finding appellate jurisdiction. Pertinent herein was the Commonwealth's invocation of Pa.R.A.P. 311, which outlines when interlocutory orders are appealable as of right, and, in particular, subsection (d), which provides: "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

Our Supreme Court ruled that the order mandating the victim to undergo testing was not appealable under Pa.R.A.P. 311(d). It observed that, in the context of trial court orders resolving questions regarding the admissibility of evidence, Pa.R.A.P. 311(d) is applicable only when the order

in question suppresses, precludes, or excludes some evidence that the Commonwealth seeks to introduce at trial. *See Commonwealth v. Cosnek,* 836 A.2d 871, 877 (Pa. 2003) (holding that Pa.R.A.P. 311(d) did not accord the Commonwealth the right to appeal a pretrial ruling that denied its request that the defense be prevented from presenting certain evidence because, in the context of a suppression ruling, Pa.R.A.P. 311(d) applies only when "a pretrial ruling results in the suppression, preclusion or exclusion of Commonwealth evidence").

The Commonwealth maintained in *Shearer* that the order requiring a psychological examination had the effect of hindering its ability to present evidence and meeting its burden of proof since the order might deter the victim from testifying. Our Supreme Court rejected the position that the Commonwealth is allowed to appeal any pretrial order that could potentially affect its ability to meet its burden of proof. It reaffirmed that an order, to be immediately appealable, had to actually suppress, preclude, or exclude the introduction of Commonwealth proof. Our Supreme Court exercised jurisdiction in the *Shearer* case under the collateral order doctrine.

As applied herein, *Shearer* mandates characterization of the pretrial order requiring disclosure of CI-2's identity as interlocutory and not appealable as of right. *Accord Commonwealth v. Jackson*, 598 A.2d 568 (Pa.Super. 1991) (limiting the Commonwealth's appeal to permissive

interlocutory review pursuant to Pa.R.A.P. 1311 of an order requiring it to reveal identity of a confidential informant).

On the other hand, under **Shearer**, the trial court's sanction order, which precluded the Commonwealth from introducing evidence seized with the warrant, is appealable under Pa.R.A.P. 311(d). Since the Commonwealth properly appealed from the order entering sanctions, it now can challenge the prior interlocutory order mandating that it disclose the identity of CI-2. **Jackson**, **supra**; **Commonwealth v. Redmond**, 577 A.2d 547 (Pa.Super. 1990). **Jackson** and **Redmond** are on point.

In **Jackson**, the trial court ordered the Commonwealth to reveal the identity of a confidential informant whose information was used to support the issuance of a warrant. After the Commonwealth violated that order, the trial court sanctioned the Commonwealth by discharging the defendant. The sanction order was appealed by the Commonwealth. The defendant maintained that the propriety of the discovery order could not be reviewed on appeal since the Commonwealth had not appealed it. We disagreed.

We noted that the order mandating disclosure was interlocutory and held that the Commonwealth was not obliged to seek permissive interlocutory review of its propriety. We further ruled that we could review the merits of the prior interlocutory order requiring disclosure of the unnamed informant once an appeal was properly filed from an order that was appealable, *i.e.*, the sanction order dismissing the charges filed against

- 10 -

the defendant. We reasoned that, in order to determine whether the sanction order was correct, "the merits of" the previous order mandating disclosure of the CI's identity "inescapably requires our review." *Id*. at 572.

We noted that, under the rule of criminal procedure applicable to discovery, a trial court is authorized to enter a remedial order only after a party has failed to comply with the rule. *Id*. Pa.R.Crim.P. 573(E) (formerly Pa.R.Crim.P. 305(E)).[2] We opined:

> The facts of the case indicate that the Commonwealth did not comply with the lower court's order of September 30, 1988, [granting discovery to the defendant of the name of the anonymous source]; therefore, we must examine the Commonwealth's non-compliance with the disclosure order to determine if that non-compliance was equivalent to a non-compliance with Rule 305 [now Rule 573], thus permitting the lower court to act pursuant to the remedy provision of Rule 305 E. This inquiry will logically require us to examine the merits of the September 30, 1988 order. However, in doing so, we are not resurrecting the quashed appeal of that order; we are simply considering whether the October 25, 1988 order [sanctioning the Commonwealth and dismissing the case] was proper considering the prior disclosure order.

*Jackson*, *supra* at 573.

The *Jackson* panel continued that the Commonwealth's decision not to pursue a permissive interlocutory appeal from the order requiring disclosure of the CI's identity did not waive its challenge to that order. We concluded that, "To find waiver would create a self-contradictory

_____

[2] The Rule is set forth in its entirety in the text *infra*.

**mandatory**, permissive interlocutory appeal." *Id*. (emphasis in original; citation and quotation marks omitted).

In *Redmond, supra*, the Commonwealth filed appeals from an order requiring a police witness to identify a confidential informant and a subsequent order precluding the police witness from testifying due to the witness's failure to provide the informant's name. After noting that it was not appealable under Pa.R.A.P. 311(d), we quashed the appeal from the discovery order. We observed that the Commonwealth had not followed the procedures for obtaining permissive interlocutory review of the order. However, in connection with deciding whether the sanction imposed for the violation of the discovery order was appropriate, we reviewed the merits of that order and upheld it.

Thus, herein, we will first examine whether the trial court properly determined that, after the Commonwealth stipulated as to what CI-2 said to police after purchasing the crack cocaine and amended the delivery charge so as to eliminate the September 10, 2010 controlled-buy, the Commonwealth still had to reveal the identity of CI-2. As noted, CI-2 told Officer Mitchell that Lofton sold him the crack cocaine during the September 10, 2010 controlled-buy. The trial court concluded that, based upon the information given to Officer Mitchell by CI-2, the identity of CI-2 was material "exculpatory evidence to the Defendant's planned defense to present evidence that he did not distribute drugs on the third night of

surveillance," *i.e.*, September 10, 2010. Trial Court Opinion, 1/17/13, at 5-6. The court decided that the evidence was discoverable under ***Brady v. Maryland***, 373 U.S. 83 (1963), as well as Pa.R.Crim.P. 573.

We first address whether CI-2's identity had to be revealed under ***Brady***. In that decision, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ***Brady****,* 373 U.S. at 87. After issuing the ***Brady*** decision, the United States Supreme Court subsequently concluded that the prosecution had the duty to reveal any evidence that exonerates the accused, even in the absence of a request for such information by the defendant. ***United States v. Agurs****,* 427 U.S. 97 (1976). The Court then extended this disclosure duty to encompass exculpatory impeachment evidence in addition to directly favorable evidence. ***United States v. Bagley****,* 473 U.S. 667 (1985). ***Brady*** and its progeny impose "an affirmative and continuing duty upon the government to disclose exculpatory information," but confers no general discovery right upon the defendant. ***Commonwealth v. Williams***, 86 A.3d 771, 788 (Pa. 2014).

It is evident herein that the trial court incorrectly determined that the identity of CI-2 exonerated Appellee. There is a distinction between the "identity" of CI-2 and the "statements" that CI-2 made during the

investigation. In this case, the identity of CI-2 was not exculpatory to Appellee. Rather, the statements made by that individual that Lofton sold him the cocaine was exculpatory to the extent that the delivery charge against Appellee was based upon the September 10th controlled-buy. To state the concept differently, it does not matter who said that Lofton sold the cocaine; the allegedly exculpatory evidence was that Lofton performed that action.

In order to protect its CI, the Commonwealth agreed to allow Appellee to present at trial CI-2's statements to police after the controlled-buy consisting of the fact that CI-2 gave Lofton the controlled-buy money and Lofton handed CI-2 the crack cocaine after recovering that drug from a couch. Once the stipulation was entered, Appellee had the unfettered ability to present CI-2's exculpatory remark through the means of the stipulation. The Commonwealth also agreed that the delivery charge would not be premised upon the September 10, 2010 controlled-buy. Hence, once the stipulation and information's amendment occurred, **Brady** did not require disclosure of the confidential informant's identity.

The trial court also concluded CI-2's identity was discoverable pursuant to Pa.R.Crim.P. 573. "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Watson**, 69 A.3d 605, 607 (Pa.Super. 2013) (quoting **Commonwealth v. Washington**,

- 14 -

63 A.3d 797, 801 (Pa.Super. 2013)).  The applicable Pennsylvania Supreme Court precedent outlining the test employed to determine whether the Commonwealth must reveal the identity of a confidential informant is contained in **Commonwealth v. Bing**, 713 A.2d 56 (Pa. 1998).[3]  The Court therein set forth:

> This Court has adopted the guidelines articulated by the United States Supreme Court in **Roviaro v. United States**, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), to guide trial courts in the exercise of their discretion in cases where, as here, the defendant requests the identity of a confidential informant who is also an eyewitness:
>
>> We believe that no fixed rule with respect to disclosure of the confidential informant's identity is justifiable.  The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.  Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.
>
> **Commonwealth v. Carter**, 427 Pa. 53, 59, 233 A.2d 284, 287 (1967), (quoting **Roviaro**, at 60-62, 77 S.Ct. 623).
>
> In **Carter**, this Court held that the balance tips in favor of disclosure where guilt is found solely on police testimony based on a single observation, where testimony from a more disinterested source, such as the informant, is available. **Id**. at 61, 233 A.2d at 287.  However, where other corroboration of the officer's testimony exists, disclosure of the informant's identity is

---

[3]  Our High Court recently spoke to this issue in **Commonwealth v. Marsh**, 997 A.2d 318 (Pa. 2010), but **Marsh** is a plurality decision with respect to the balancing factors to be applied in this context.

not necessarily required. *Id.* at 59, 233 A.2d at 287. This Court also recognized the importance of the Commonwealth's qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement. *Id.; Commonwealth v. Herron*, 475 Pa. 461, 380 A.2d 1228 (1977). Also, the safety of the confidential informant is a controlling factor in determining whether to reveal his identity.

Further, before an informant's identity may be revealed, the defendant must establish pursuant to Pa.R.Crim.P. 305(B) [now Rule 573(B)] that the information sought is material to the preparation of the defense and that the request is reasonable. *Commonwealth v. Roebuck*, 545 Pa. 471, 477, 681 A.2d 1279, 1283 (1996). Only after a showing by the defendant that the information sought is material and the request reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed. *Id.* at 478, 681 A.2d at 1283.

*Id*. at 58.

As articulated in *Bing*, even before the discretion of the trial court to order disclosure can be exercised, the defendant must establish that the CI's identity is material to the preparation of a defense and that the request is reasonable. This precept was reaffirmed in *Commonwealth v. Marsh*, 997 A.2d 318 (Pa. 2010). Therein, six justices agreed that the trial court's discretionary authority to mandate disclosure of a CI is not triggered until after a defendant establishes materiality and reasonableness. *See id*. at 325.[4]

_____

[4] *Marsh* is precedential in this respect under Justice Saylor's concurrence, wherein he, joined by Chief Justice Castille and Justice Todd, agreed "with the lead Justices that a defendant is required to establish materiality and
*(Footnote Continued Next Page)*

The rule referenced by our Supreme Court in **_Bing_**, former Pa.R.Crim.P. 305, related to discovery. As noted, that discovery provision is now found at Pa.R.Crim.P. 573. The pertinent portion of Rule 573 states that in all court cases, with exceptions inapplicable herein,

> if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, **upon a showing that they are material to the preparation of the defense, and that the request is reasonable:**
>
> (i) the names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 573(B)(2)(a)(i) (emphasis added).

If materiality and reasonableness are proven, then the courts must balance the public interest in the police's ability to obtain information against the defendant's right to prepare his defense. In this connection, we consider the crime, the potential defense, and the significance of the CI's testimony. The scales tip in favor of disclosure if the Commonwealth will be relying on police testimony based on a single observation. If other proof corroborates a police officer's testimony, disclosure is not mandated. Furthermore, the safety of the confidential informant can be a controlling factor in determining whether to reveal a source's identity.

_(Footnote Continued)_ ———————————

reasonableness before a trial court may exercise its discretionary prerogative to require disclosure of the identity of a confidential informant."

Our conclusion that the identity of CI-2 was not exculpatory applies with equal force to the determination that it was not material. As noted, the Commonwealth agreed to stipulate that CI-2 told police that Lofton sold him the drugs inside the row house on September 10, 2010, and to amend the delivery charge to eliminate the September 10, 2010 controlled-buy. Thereafter, the identity of CI-2 was not material to a defense to any pending charge.[5] Additionally, this case was not one where Appellee's identity was

_____

[5] The Dissent suggests that we should affirm the disclosure order because the identity of the CI-2 was material to Appellee's defense in connection with the conspiracy charge. It states, "CI-2 is the only person who could testify as to what actually occurred inside the residence on that date, and whether [Appellee] engaged in any behavior therein that would implicate him as a conspirator with Logan." Dissenting Memorandum at 9. It suggests that the "CI-2's identity is material because [Appellee] still faces a conspiracy charge that might implicate the events that occurred inside the residence and that it was reasonable to [Appellee] to request disclosure." *Id*.

The Dissent's position ignores the context of the events involved in this police investigation as well as the extent of the stipulation entered herein. Appellee was implicated in two other controlled-buys. On September 7, 2010, Officer Francis saw Appellee speak with CI-1, enter 2737 Judson Way with CI-1, and the CI-1 exit that residence with crack. On September 8, 2010, Officer Beattie saw CI-1 speak with Appellee, Appellee briefly enter and then exit 2737 Judson Way, and hand CI-1 crack cocaine in exchange for money. On September 10, 2010, Officer Mitchell saw CI-2 **speak with both Lofton and Appellee outside 2737 Judson Way and observed all three individuals enter the house together**. The CI-2 was inside the house for a "minute or two." N.T. Motion, 7/19/11, at 42. The Commonwealth agreed to stipulate as to everything that CI-2 told police about what happened inside 2737 Judson Way: CI-2 handed Lofton the buy money, Lofton found the crack cocaine in a couch, and Lofton handed CI-2 the crack cocaine. This information certainly covers events spanning a minute or two, and provides all the exoneration needed by Appellee as to the conspiracy charge premised upon the controlled buy occurring inside

*(Footnote Continued Next Page)*

established through a single police observation. Rather, both Officer Francis and Officer Beattie saw Appellee on September 7, 2010. Officer Francis observed Appellee initiate the controlled-buy with CI-1, who later drove with Officer Beattie past Appellee so that the officer could view Appellee's face. Officer Beattie watched as Appellee conducted the controlled-buy with CI-1 on September 8, 2010. Then, Officer Mitchell observed CI-2 speak with Appellee and Lofton before all three people entered 2737 Judson Way on September 10, 2010. This case was not one where, even if the balancing test was applicable, the scales tipped in favor of disclosure. Accordingly, the trial court abused its discretion in continuing to insist that the Commonwealth reveal the identity of CI-2 after the Commonwealth entered the stipulation and amended the delivery charge. Since the disclosure order

_____
*(Footnote Continued)*

2737 Judson Way on September 10, 2010. Additionally, there was evidence seized and behavior observed during the execution of the search warrant implicating Appellee and Lofton in a conspiracy to sell drugs.

A defendant has the burden of establishing that the identity of a confidential informant is material. He is not permitted to engage in a fishing expedition to ascertain if it "is possible" that a confidential informant has information to assist in a defense. Dissenting Memorandum at 9. Given the facts outlined above, we simply find it untenable that CI-2 could possibly provide any additional information that would assist Appellee in his defense of the conspiracy charge.

was improper, the Commonwealth did not violate Rule 573 and could not be sanctioned for the same.[6]

We additionally conclude that the sanction awarded was overbroad. We are aware that we review a trial court's order awarding sanctions under an abuse of discretion standard. ***In re York County Dist. Attorney's Office***, 15 A.3d 70, 73 (Pa.Super. 2010). The trial court's authority to sanction a party for a discovery violation is derived from Pa.R.Crim.P. 573(E), which states:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule[, which governs discovery matters,] the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant,

_____

[6] The Dissent's vitriolic characterization of this Court's decision and its criticism of the prosecutor's actions herein are unwarranted. We have neither eradicated our law nor announced breathtaking new precedent. Dissenting Opinion at 3, 4, 6. Additionally, the prosecutor was not a "defiant lawyer" who engaged in a "flagrant" violation of the trial court's order and "willy-nilly" flouted a valid court order at "her own whim." Dissenting Opinion at 1, 11, 15. The Commonwealth made a good faith response to the discovery order. When the trial court ordered it to reveal CI-2's identity, the Commonwealth was unable to appeal because the order was interlocutory. It freely agreed to forego any fruits of its transgression. It withdrew the September 10, 2010 controlled-buy as support for the delivery charge and stipulated to everything that the confidential informant said about the events inside 2737 Judson Way on September 10, 2010. Finally, the Commonwealth reported that it would proceed with the conspiracy charge limited to events surrounding execution of the search warrant. After these actions by the prosecutor, there was no cause for the trial court to continue to insist that the Commonwealth reveal the identity of the CI, whom the Commonwealth validly wanted to protect from reprisal.

or it may enter such other order as it deems just under the circumstances.

While the trial court is accorded discretion to sanction a party who violates an order, there are limits upon the sanctions that a trial court can impose. ***In re York***, ***supra***, is instructive herein. In that case, the defendant was charged with possession with intent to deliver, possession of an offensive weapon, and driving while his operating privileges were suspended or revoked. He filed an omnibus pretrial motion requesting suppression of evidence and that the Commonwealth be ordered to disclose the identity of a CI. The trial court denied the motion to suppress but ordered the Commonwealth to disclose the CI's identity.

After the Commonwealth's request for reconsideration of the order was denied, it stated that it would not comply with the order. The defendant moved for dismissal, which the trial court denied. The trial court found the Commonwealth in contempt. The defendant and the Commonwealth thereafter negotiated a guilty plea, which the trial court refused to accept. The Commonwealth then *nolle prossed* the charges. The trial court imposed a contempt sanction of $5,000, which the Commonwealth appealed.

This Court noted that there are limits on "the types of sanctions which may be imposed as a result of a prosecutor's violation of discovery rules. We have stated that the remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgressions." ***Id***. at 73

- 21 -

(quotation marks and citation omitted). The **York** panel continued that the "the *nolle prosse* of the charges precluded the Commonwealth from proceeding with the 'fruits of its transgression.' Thus, once the Commonwealth moved to *nolle prosse* the case rather than disclose the identity of the CI, the issue of contempt should have ended." **Id**. Our ruling was consistent with "the Pennsylvania Supreme Court's recognition of the importance of the Commonwealth's qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement." **Id**. (citation and quotation marks omitted). This Court concluded that "the Commonwealth ought to have the option of keeping its commitment of non-disclosure to a confidential informant by *nolle prossing* charges without further sanction by the trial court." **Id**.

In the present case, the Commonwealth was told to disclose CI-2's identity. Seeking to prevent harm to CI-2 while avoiding the benefits from its decision to withhold CI-2's name, the Commonwealth amended the delivery charge to omit the September 10, 2010 controlled-buy, and it agreed that Appellee could present evidence that Lofton sold CI-2 the drugs on September 10, 2010.

The dissent attempts to distinguish **York** by noting that all charges were *nolle prossed* therein, while, in this case, the "the prosecutor attempted simultaneously to disobey the order while proceeding with the bulk of the prosecution." Dissenting Opinion at 17. The cases are aligned in

that the Commonwealth agreed not to benefit from the fruits of its transgression in both cases.

What distinguishes the case at bar from *York* is that, herein, the Commonwealth had the benefit of significant other evidence, and it did not need to *nolle prose* all of its charges against Appellee based upon its failure to reveal CI-2's identity. The Dissent has chosen to ignore the following. On September 7, 2010, Appellee was observed by Officer Francis participating in a controlled-buy, and on September 8, 2010, Appellee sold drugs to CI-1 while Officer Beattie watched. These events supported the charges of delivery of a controlled substance and possession of a controlled substance by an unregistered person. During these transactions, Appellee was standing near to and then entered 2737 Judson Way. The search warrant executed at 2737 Judson Way yielded drugs, Lofton and Appellee were both present, and events occurring during the execution of the warrant supported that they were conspirators.

Contrary to the Dissent's position, the September 10, 2010 controlled-buy and the validity of the search warrant executed on September 10, 2010, are not intertwined. The search warrant was premised upon all three controlled-buys. There was probable cause for a search of 2737 Judson Way based solely upon the first two controlled-buys involving CI-1. The Dissent's attempt to link the search warrant solely to the September 10, 2010 controlled-buy, Dissenting Opinion at 18, is untenable in light of the actual

facts. Thus, the evidence suppressed by the trial court was unrelated to any transgression of the Commonwealth involving its refusal to reveal the identity of CI-2, and the reasoning of **In re York** applies. **Cf. Commonwealth v. Redmond**, 577 A.2d 547 (Pa.Super. 1990) (trial court correctly precluded evidence as a sanction where Commonwealth refused to reveal identity of confidential informant who had provided police with detailed information that another individual committed the decades-old murder for which the defendant had been charged). The trial court abused its discretion in suppressing all evidence obtained by the Commonwealth on September 10, 2010.

Order reversed. Case remanded. Jurisdiction relinquished.

Judges Donohue, Shogan, Olson, Stabile, and Jenkins join this opinion.

Judge Mundy concurs in the result.

Judge Wecht files a dissenting opinion in which Judge Lazarus joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2015