J-E01001-15

2015 PA Super 202

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KYLE JORDAN | |
| Appellee | No. 2832 EDA 2011 |

Appeal from the Order Entered on September 1, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0014464-2010

BEFORE:  BOWES, J., DONOHUE, J., SHOGAN, J., LAZARUS, J., MUNDY, J., OLSON, J., WECHT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY WECHT, J.:          **FILED SEPTEMBER 22, 2015**

The Commonwealth appeals from a sanction order that was imposed by the trial court.  The court imposed that sanction only after the prosecutor intentionally and openly disobeyed an explicit order.  That order required the prosecutor to disclose the identity of one out of two confidential informants whose identities the defense had sought.

Without even the slightest condemnation of the prosecutor's defiance, today's learned Majority excuses the prosecutor's conduct.  Instead, the Majority takes issue not with the defiant lawyer, but with the trial court that was defied.  The Majority then proceeds to hold that the underlying disclosure order lacked legal merit.  I respectfully disagree.  In my view, the trial court did not abuse its discretion either by ordering the disclosure of the

identity of one of the confidential informants or by imposing the stiff, but justified, sanction.  Consequently, I dissent.

The Majority thoroughly sets forth the relevant factual and procedural histories of this case.  **See** Maj. Op. at 1-7.  I need not repeat those details here.

I begin by stating my agreement with the Majority's conclusion that the underlying disclosure order is reviewable in this appeal.  Both **Commonwealth v. Jackson**, 598 A.2d 568 (Pa. Super. 1991), and **Commonwealth v. Redmond**, 577 A.2d 547 (Pa. Super. 1990), support the Majority's holding in this regard.  **See** Maj. Op. at 9-11.  These cases enable us to review the underlying disclosure order.

I must note that application of those precedents here creates something of an anomaly.  As the Majority notes, the Commonwealth itself generally is not permitted by our appellate rules and case law to appeal a disclosure order.  **Id.** at 9.  Thus, had the Commonwealth actually complied with the trial court's order, this appeal would never have occurred.  However, the Commonwealth now is rewarded for disobeying the order, regardless of the merits of the trial court's decision to enter that order.  By dint of refusal to abide by the trial court's order, the prosecutor was held in contempt of court and sanctioned.  Luckily for the Commonwealth, violating the order opened the door for this Court to review the otherwise unreviewable disclosure order.

Typically, we do not reward those who act in direct contravention of a court order. Nonetheless, peculiar though it may seem, **Jackson** and **Redmond** mandate that we do so under these circumstances. I am bound by our precedents. I am compelled to agree with the Majority that we can, and must, review the merits of the trial court's disclosure order.

That is where my agreement with the Majority ends.

The Majority accepts the Commonwealth's contention that it should not have had to disclose CI-2's identity. In large part, the Majority premises this conclusion upon the view that the informant's identity was not material for purposes of **Brady v. Maryland**, 373 U.S. 83 (1963), and Pa.R.Crim.P. 573. The Majority posits that "[t]here is a distinction between the 'identity' of CI-2 and the 'statements' that CI-2 made during the investigation." Maj. Op. at 13-14. "To state the concept differently," goes the Majority's parsing, "it does not matter who said that Lofton sold the cocaine; the alleged exculpatory evidence was that Lofton performed that action." **Id.** at 14. The Majority offers no case authority in support of this cramped interpretation of our law involving confidential informants.

Consider the consequences of such a decision in this Commonwealth. The Majority swiftly eradicates our law with regard to disclosure of the identity of confidential informants. Despite decades of cases examining whether a trial court correctly ordered the disclosure (or non-disclosure) of the identity of a confidential informant, the Majority today tells us that we no longer need to concern ourselves with such an inquiry. All that needs to be

disclosed, if anything, is the exculpatory material itself. A trial court no longer has to order the disclosure of the identity of a confidential informant, so long as the defense is provided with the information that the informant would provide and the Commonwealth stipulates to the admission of that material. There is no basis for such a change in our law.

This breathtaking new precedent substantially hinders a defendant's ability to plan and present his or her own defense. Indeed, it puts the Commonwealth in the driver's seat of the defendant's trial defense. For instance, as is evident in this case, requiring only the disclosure of the information obtained from the informant, and not the informant's identity, means that the defendant cannot call the informant as a witness. The jury does not get to see, hear and assess the credibility of the informant, nor will the jury hear about the circumstances surrounding the relevant event or information. The jury will hear only the curated, isolated and spoon-fed information that the Commonwealth chooses to deal out. Likely, this information will come from either the prosecuting attorney or from a police officer, who undeniably is an agent of the entity that is prosecuting the defendant.

The jurors will receive the information. But they will get it in a severely limited and narrow way. The jury will not get to assess and contextualize the demeanor, emotion, or credibility of the source of the information. The defense does not get to confront and examine the informant to establish the who, where, how, when, and why that give

- 4 -

substance to any and all testimony. The Majority's claim that this procedure grants a defendant the "unfettered ability" to present the information through a stipulation is baffling and inexplicable. *Id.* at 14. It is oxymoronic to assert that one has the unfettered ability to present information when the only way to present that information is by the cold reading of a stipulation. There is nothing "unfettered" about it. It is about as fettered as fettered can be.

The Majority also claims that "we find it untenable that the CI-2 could possibly provide any additional information that would assist Appellee in his defense of the conspiracy charge." *Id.* at 19 n.5. This assertion is based upon the speculation that the **only** information that the CI had was provided to the police. This fundamentally misapprehends the purpose of disclosing the identity of informants in the first place. When required by law, courts order the Commonwealth to disclose the identity of the informant so that the defense can locate that person, question him or her about the information that has been provided, attempt to ascertain whether the informant has any exculpatory information, and then call that person as a witness for the defense. To my knowledge, this Court has no record of a discussion with the informant that would enable us to conclude that the defense has **all** of the information that could possibly be provided. We simply have no way of knowing that this is in fact the case. All we know for certain is that the stipulation would provide Jordan and the jury with all of the information that the Commonwealth knows, not with all of the information that the CI knows.

This is one reason why we require the disclosure of the identity of confidential informants and not simply the information that they have relayed to the police.

There is no basis for the Majority to rewrite our laws with regard to the disclosure of confidential informants.[1] This infirmity exists even where the Commonwealth offers to stipulate to the information. It requires little imagination to realize that this device closes the door to the defendant's ability to determine whether the informant has additional exculpatory information, and to the defendant's ability to put on a full and complete defense. I would apply our traditional standards of law to determine whether the trial court abused its discretion in ordering the disclosure, and I would not rewrite those rules or redefine the applicable terms in doing so.

Those governing standards, as cited by the majority and set forth in **Commonwealth v. Bing**, 713 A.2d 56 (Pa. 1998), are as follows:

> This Court has adopted the guidelines articulated by the United States Supreme Court in **Roviaro v. United States**, 353 U.S. 53 (1957), to guide trial courts in the exercise of their discretion in cases where, as here, the defendant requests the identity of a confidential informant who is also an eyewitness:
>
> > We believe that no fixed rule with respect to disclosure of the confidential informant's identity is justifiable. The problem is one that calls for balancing the public interest in

---

[1] The Majority initially offers these changes in the context of its **Brady** discussion. **See** Maj. Op. at 13-14. However, the Majority later extends these observations to its discussion of materiality for purposes of Pa.R.Crim.P. 573.

> protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.
>
> *Commonwealth v. Carter*, 233 A.2d 284, 287 (Pa. 1967) (quoting *Roviaro*, 353 U.S. at 60-62).
>
> In *Carter*, this Court held that the balance tips in favor of disclosure where guilt is found solely on police testimony based on a single observation, where testimony from a more disinterested source, such as the informant, is available. *Id.* at 61. However, where other corroboration of the officer's testimony exists, disclosure of the informant's identity is not necessarily required. *Id.* at 59. This Court also recognized the importance of the Commonwealth's qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement. *Id.*; *Commonwealth v. Herron*, 380 A.2d 1228 (Pa. 1977). Also, the safety of the confidential informant is a controlling factor in determining whether to reveal his identity.
>
> Further, before an informant's identity may be revealed, the defendant must establish pursuant to [Rule 573(B)] that the information sought is material to the preparation of the defense and that the request is reasonable. *Commonwealth v. Roebuck*, 681 A.2d 1279, 1283 (Pa. 1996). Only after a showing by the defendant that the information sought is material and the request is reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed. *Id.* at 478.

*Id.* at 58 (citations modified). Notably, the inquiry addressed by the United States Supreme Court, the Pennsylvania Supreme Court, and this Court involved whether the prosecution must disclose the identity of the informant, not just the information relayed to police officers by that informant.

*Bing* also referenced Pa.R.Crim.P. 573(B). That Rule states, in pertinent part, as follows:

> if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, **upon a showing that they are material to the preparation of the defense, and that the request is reasonable**:
>
> (i) [t]he names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 573(B)(2)(a)(1) (emphasis added).

Our inquiry is clear. We must determine whether the trial court abused its discretion[2] in determining that the identity of CI-2 was material to the "preparation" of the defense, and whether the request was reasonable. I would hold that the trial court did not abuse its discretion.

In my view, this case falls under *Carter*'s instruction that disclosure is warranted when information could come from a source "more disinterested" than the police officer, *i.e.*, the informant. *Carter*, 233 A.2d at 287. I also have no doubt that the information is material. As noted above, materiality cannot be swept under the rug by changing the inquiry or by limiting the type of information that can be provided. Nor is it accurate to say that the

---

[2] "An abuse of discretion is more than just an error in judgment, and the trial court will not be found to have abused its discretion unless the record discloses the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Sharp*, 792 A.2d 1266, 1268 (Pa. Super. 2002). Thus, we must find more than mere error or disagreement before we may find an abuse of discretion.

identity of the informant is immaterial because the Commonwealth agreed to withdraw the delivery charge that resulted from CI-2's information. Jordan still was charged with conspiracy, which, according to the criminal information, included the actions that occurred on September 10, 2010. The conspiracy that occurred on that date undeniably involved Lofton, who CI-2 described as the person who sold him drugs on that date, as a co-conspirator. CI-2 is the only person who could testify as to what actually occurred inside the residence on that date, and whether Jordan engaged in any behavior therein that would implicate him as a conspirator with Lofton.

Rule 573 cannot be cast aside simply because at trial Jordan would be able to present (through stipulation) that Lofton was the person who sold the drugs to CI-2. First, the informant may have additional information that would exonerate Jordan. Second, the inquiry is not limited only to the defense put on at trial. Disclosure is required under the rule if the identity of the informant is material "to the preparation of the defense." Pa.R.Crim.P. 573. It was reasonable for Jordan to request the disclosure of the identity of CI-2 so that Jordan could prepare his defense, determine what other evidence CI-2 might possess, and decide whether CI-2 could serve as a witness for the defense at trial. It is possible that CI-2 had no additional information to assist Jordan. We do not know. We cannot say for certain that he did not, as the Majority implicitly concludes. What we do know is that CI-2's identity is material because Jordan still faces a conspiracy charge

that might implicate the events that occurred inside the residence, and that it was reasonable for Jordan to request disclosure.

For these reasons, I would hold that the trial court correctly ordered the disclosure of CI-2's identity. At a very minimum, the order was not an abuse of discretion. The Majority has not demonstrated in any manner that the decision was based upon prejudice, bias, ill-will, or was so far beyond the boundaries of the court's discretion that a discernible abuse occurred.

Having concluded that the underlying order was not an abuse of discretion, I now turn my attention to the prosecutor's unfortunate behavior, and whether the sanction for that behavior was justified. I harbor no doubts that it was.

"We review a trial court's finding of contempt for an abuse of discretion." *In re York County District Attorney's Office*, 15 A.3d 70, 73 (Pa. Super. 2010). Demonstrating that a trial court abused its discretion is a hefty burden: "An abuse of discretion is more than just an error in judgment, and the trial court will not be found to have abused its discretion unless the record discloses the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Sharp*, 792 A.2d 1266, 1268 (Pa. Super. 2002) (citing *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001)). Additionally, in a criminal case, a trial court enjoys "broad discretion in formulating remedies for a failure to comply with discovery requirements."

*Commonwealth v. Galloway*, 771 A.2d 65, 68 (Pa. Super. 2001) (quoting

*Commonwealth v. Thiel*, 470 A.2d 145, 150 (Pa. Super. 1983)).

Pennsylvania Rule of Criminal Procedure 573(E) outlines the actions

that a trial court may take upon a violation of a discovery order:

> If at any time during the course of the proceedings it is brought
> to the attention of the court that a party has failed to comply
> with this rule, the court may order such party to permit
> discovery or inspection, may grant a continuance, or may
> prohibit such party from introducing evidence not disclosed,
> other than testimony of the defendant, **or it may enter such
> other order as it deems just under the circumstances**.

Pa.R.Crim.P. 573(E) (emphasis added). Here, in light of the prosecutor's

open refusal to obey the trial court's order and to disclose the identity of the

informant, the court prohibited the prosecutor from introducing evidence

related to the informant, as well as evidence pertaining to the subsequent

execution of a search warrant. Unquestionably, the court's order had the

practical effect of dismissing all of the charges relating to Jordan's conduct

on September 10, 2010. I would hold that the sanction, while severe, was

warranted due to the prosecutor's flagrant violation of the trial court's

discovery order. As such, in my view, the court's sanction was not an abuse

of discretion.

"Although not expressly included in the list of remedies, a trial court

does have the discretion to dismiss the charges, but only for the most

extreme and egregious violations." *Commonwealth v. Hemmingway*, 13

A.3d 491, 502 (Pa. Super. 2011) (citing *Commonwealth v. Burke*, 781

A.2d 1136, 1144 (Pa. 2001)). In **Hemmingway**, the Pennsylvania Supreme Court noted in a parenthetical the following quote from **Commonwealth v. Shaffer**, 712 A.2d 749 (Pa. 1998):

> [T]he sanction of dismissal of charges should be utilized in only the most **blatant** cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

**Hemmingway**, 13 A.3d at 502 (quoting **Shaffer**, 712 A.2d at 752) (emphasis added). Here, the prosecutor openly refused to follow the trial court's order. The prosecutor's actions could not have been more blatant.

On July 19, 2011, the trial court held a hearing on Jordan's motion to produce the identities of the two confidential informants utilized during the investigation of Jordan's illicit activities. After receiving testimony, the trial court ruled that the first confidential informant's identity would not be released. However, the court made the following factual findings and conclusions of law with regard to the second informant:

> There is a second CI that is at issue in this matter. The confidential informant we will identify as CI-2.
>
> The witness to this matter was Police Officer Mitchell. This incident took place on the third day, September 10, 2010. Officer Mitchell testified that he watched CI-2 go to the location of 2737 Judson Street where [he/she] had a meeting with the defendant and another man identified as James Lofton. And he saw all three of them go inside the dwelling of 2737 Judson. Upon entering the house, the CI exited shortly thereafter and turned over two chunks of crack cocaine. The CI had been used twenty to twenty-five times and virtually all uses had led to

- 12 -

> arrests and convictions. The officer testified this CI does have family in the area and also would be at risk for physical harm if [his/her] name were revealed.
>
> The officer on cross-examination testified that he prepared the PARS Report along with the other officers with information provided by the other officers. He did testify that upon information received from the CI, identified as CI-2, that Lofton was the individual who sold the CI, identified as CI-2, drugs on September 10, 2010.
>
> Based upon the testimony of Officer Mitchell in this CI motion, this Court feels that it is necessary for the identity of CI-2 to be revealed as [he/she] is the only individual who can provide that information and it would not be hearsay in a motion. So the Court grants the defendant's CI motion as to the confidential informant that was used on the date of September 10, 2010.

Notes of Testimony ("N.T."), 7/19/2011, at 74-75. The prosecutor withdrew the delivery charge pertaining to the sale that occurred inside the home on that date, but decided to continue to pursue a charge of conspiracy, which was predicated upon Jordan's relationship with Lofton, who was the person who actually sold the crack to the informant. *Id.* at 76-77. The prosecutor further agreed to stipulate at trial to the informant's statement that Lofton was the person who sold the crack.

However, with regard to the trial court's explicit order to reveal the identity of the informant, the prosecutor stated on the record to the trial court that "[w]e will not be providing that name and I will not be going forward on that particular sale to Mr. Lofton by that CI." *Id.* at 81. When defense counsel reminded the trial court that the order required the prosecutor to disclose the informant's name, the prosecutor interjected: "I'm not giving him the name of that second CI." *Id.* at 82. Throughout the

hearing, the prosecutor maintained the position that, because the police officers could testify as to what was recovered and observed during the execution of the search warrant, the prosecutor did not need to disclose the identity of the informant, and that she could prove the conspiracy charge with the officers' testimony alone. Apparently, the prosecutor believed that, if she could prove her case with other evidence, she could then ignore the trial court's explicit order. *Id.* at 84.

A second hearing was held on September 1, 2011. Once again, judicial mandate notwithstanding, the prosecutor persisted unrelentingly in the position that she could unilaterally deem the disclosure order optional or non-binding. The prosecutor simply declared: "I can still proceed on all the dates. And, I will only be presenting evidence of what the officers themselves observed." N.T., 9/1/2011, at 6. The trial court reminded the prosecutor that the court had granted the motion, and admonished her as being "incorrect." In the face of the court's warning, the prosecutor nonetheless insisted that "we can still go forward." *Id.* at 6-7.

The prosecutor attempted to circumvent the disclosure order by arguing that, because she would not be introducing any evidence pertaining to the informant, both parties had the same evidence in their files for trial purposes and, therefore, Jordan would not be put at a disadvantage. However, it already had been revealed that the informant had some exculpatory information. Defense counsel sought to interview the witness to determine whether the informant had observed other evidence within the

- 14 -

home that would exculpate Jordan, particularly with regard to the conspiracy charge. To this claim, the prosecutor defiantly stated: "The CI will never be produced." *Id.* at 8. In the face of this open and intentional disregard of the disclosure order, the trial court found the prosecutor to be in contempt, and ordered that she be prohibited from introducing any evidence related to the events that occurred on September 10, 2010. *Id.* at 11.

Like all others, a prosecutor is bound to adhere to orders issued by a court of competent jurisdiction.[3] Chaos would result if any lawyer or litigant could, willy-nilly, disregard or flout valid court orders at his or her own whim.[4] This is not an instance of substantial compliance, accident, mistake, or misinterpretation of an order. The fact of the matter is that the prosecutor here flatly disobeyed the trial court's directive, and did so knowingly and willfully in open court. When a court issues an adverse order, a litigant has multiple options. The litigant can: (1) follow the order; (2) ascertain the appealability of the order, and pursue an appeal if available; or

---

[3]   Indeed, our Supreme Court has codified the "Special Responsibilities of a Prosecutor." Pennsylvania Rule of Professional Conduct 3.8. *See id.*, comment ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate.").

[4]   *See* Oliver Wendell Holmes, Jr., *The Path of the Law,* 10 Harv. L. Rev. 457, 457 (1897) ("The reason why it is a profession, why people will pay lawyers to argue for them or to advise them, is that in societies like ours the command of the public force is intrusted to the judges in certain cases, and the whole power of the state will be put forth, if necessary, to carry out their judgments and decrees.").

(3) sever the portion of the case affected by the order and proceed, if possible, with the remainder of the cause of action or charges. Simply saying "no" to the adverse order, and openly refusing to obey it, is not one of the permissible actions that a litigant may take. We are a government of laws, not of men or women.

Jordan also suffered demonstrable prejudice as a result of the Commonwealth's non-disclosure. Jordan was denied access to the only available witness who could exonerate him on one charge, and quite possibly on others. Hence, per **Hemmingway** and **Shaffer**, the prosecutor's actions were blatant, egregious, and prejudicial. In such a situation, it cannot be said that the trial court's sanction was manifestly unreasonable. **See Sharp**, *supra*.

In reaching this decision, I have had occasion to review our prior decision in **In re York County District Attorney's Office**, which bears a facial similarity to the present case. There, the trial court had granted a defense motion to disclose the identity of a confidential informant. 15 A.3d at 71. The prosecutor unsuccessfully sought reconsideration of the order, but did not appeal the order. Instead, the prosecutor refused to comply with the order. The trial court found the prosecutor to be in contempt, but initially did not impose a fine. The parties reached a plea agreement. However, the trial court refused to accept the plea, and ordered the parties to trial. Instead of complying with the order, the Commonwealth chose to *nolle prosse* the charges with prejudice. **Id.**

The trial court then held a sanctions hearing on the prosecutor's contempt. At the conclusion of the hearing, the trial court fined the contemptuous prosecutor $5,000. *Id.* On appeal, we reversed the fine. *Id.* at 73. In doing so, we noted that, when a prosecutor violates a discovery order, "[t]he remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgressions." *Id.* (citing **Commonwealth v. King**, 932 A.2d 948, 952 (Pa. Super. 2007)). Applying this principle, we held that, once the prosecutor *nolle prossed* the charges, he no longer was able to benefit from his transgressions, and that the contempt should have been dissolved at that point. *Id.*

The facts of **York** clearly are distinguishable from those here, and, for that reason, **York** is not controlling. In **York**, rather than obey the order, the prosecutor decided to *nolle prosse* the charges **in their entirety**. The prosecutor realized that he had two choices: either comply with the order, or decline to prosecute the defendant entirely. The prosecutor chose the latter. Instantly, by contrast, the prosecutor *nolle prossed* **only** the delivery charge, and attempted to persevere in the prosecution on the remaining conspiracy charge. In **York**, there was no basis to impose a sanction, because the prosecutor already had been sanctioned by being forced to dismiss the charges against the defendant. Instantly, by contrast, the prosecutor attempted simultaneously to disobey the order while proceeding with the bulk of the prosecution. The circumstances of the instant case differ significantly from those in **York**.

Moreover, in **York**, the prosecutor's decision to *nolle prosse* all of the charges against the defendant denied the prosecutor any benefit from his transgression. The same cannot be said in the matter *sub judice*. On September 10, 2010, the police utilized an informant (the second in this case) to purchase narcotics from a home in which Jordan was present. That informant went into the home, and returned minutes later with crack cocaine. Later that day, the police obtained and executed a search warrant on that residence. There is sufficient cause for concern that these two events were connected[5] to enable us to conclude that, had the prosecutor been permitted to introduce the police officer testimony regarding the execution of the warrant, the prosecutor not only would have escaped sanction for her blatant disregard of a valid court order, but in fact would have benefitted from this intentional contempt. For the same reason, the prosecutor's stipulation to the informant's exculpatory statement that Lofton sold him the crack cocaine would not erase the stain of the contempt in its entirety, nor afford Jordan the opportunity to seek additional impeaching testimony.

Here, the prosecutor attempted unilaterally to disregard the order. When that tactic was unsuccessful, the prosecutor openly refused to comply with the order. This case deviates meaningfully from **York**. The actions of

---

[5]   For instance, the police officers obtained and executed the search warrant on the same days as the informant's controlled buy from Lofton.

the informant and the actions of the police officers were sufficiently intertwined to necessitate suppression of all testimony related to the events occurring on September 10, 2010. No other remedy could ensure that the prosecutor did not benefit from her transgressions, nor would any other remedy serve the interests of justice and vindicate the authority of the court. The trial court was well within its discretion in imposing this sanction.

For these reasons, I would affirm the trial court. Because the Majority holds otherwise, I dissent.

Judge Lazarus joins this dissenting opinion.